ROCK DRILLING, BLASTING, ROADS, SEWERS, VIADUCTS, BRIDGES, FOUNDATIONS, EXCAVATIONS AND CONCRETE WORK ON ALL CONSTRUCTION, HOD CARRIERS', BUILDING AND COMMON LABORERS' LOCAL UNION NO. 17, Plaintiff-Appellant,

v.

MASON & HANGER COMPANY, Inc., Defendant-Appellee.

ROCK DRILLING, BLASTING, ROADS, SEWERS, VIADUCTS, BRIDGES, FOUNDATIONS, EXCAVATIONS AND CONCRETE WORK ON ALL CONSTRUCTION, HOD CARRIERS', BUILDING AND COMMON LABORERS' LOCAL UNION NO. 17, Plaintiff-Appellant,

v.

WALSH CONSTRUCTION COMPANY, Inc., Defendant-Appellee.

ROCK DRILLING, BLASTING, ROADS, SEWERS, VIADUCTS, BRIDGES, FOUNDATIONS, EXCAVATIONS AND CONCRETE WORK ON ALL CONSTRUCTION, HOD CARRIERS', BUILDING AND COMMON LABORERS' LOCAL UNION NO. 17, Plaintiff-Appellant,

v.

B. PERINI & SONS, Inc., Defendant-Appellee.

ROCK DRILLING, BLASTING, ROADS, SEWERS, VIADUCTS, BRIDGES, FOUNDATIONS, EXCAVATIONS AND CONCRETE WORK ON ALL CONSTRUCTION, HOD CARRIERS', BUILDING AND COMMON LABORERS' LOCAL UNION NO. 17, Plaintiff-Appellant,

v.

GEORGE M. BREWSTER & SON, Inc., Defendant-Appellee.

Nos. 17, 16, 18, 19,

Dockets 23066, 23065, 23067, 23068.

United States Court of Appeals Second Circuit.

Argued Nov. 5, 1954.

Decided Dec. 6, 1954.

Boudin, Cohn & Glickstein, New York City, Francis Martocci and Charles De La Vergne, Kingston, N. Y. (Hyman N. Glickstein and Daniel W. Meyer, New York City, of counsel), for plaintiff-appellant.

Nevius, Brett & Kellogg, New York City, for defendent-appellee, Mason & Hanger Company, Inc. and Willkie, Owen, Farr, Gallagher & Walton, New York City, for defendants-appellees, Walsh Construction Company, Inc. and B. Perini & Sons, Inc. (Franklin Nevius, Mark

F. Hughes, James E. Carroll and F. Davis Gardner, New York City, of counsel).

William H. Wurts, New York City, John J. Breshin, Hackensack, N. J., of counsel, for defendant-appellee George M. Brewster & Son, Inc.

Before CHASE, MEDINA and HINCKS, Circuit Judges.

MEDINA, Circuit Judge.

These are four companion actions in tort by a labor union to recover damages alleged to have been sustained severally by some hundreds of employees of each defendant by reason of diminution of wages and lack of proper working conditions, said to have been caused by the operation of a conspiracy between one James Bove and each of defendants pursuant to which certain bribes were paid by each defendant to Bove. References herein are to the record in the action against Mason & Hanger Company, Inc., as the opinion below was published under the title of that action.

The original complaints were dismissed by Judge Rifkind for lack of jurisdiction of subject matter and for failure to state a claim upon which relief could be granted. Amended complaints were dismissed by Judge Samuel H. Kaufman, who found that, "notwithstanding some changes in verbiage and some additions," the amended complaints suffered from the same infirmities as were apparent upon the face of the others. These appeals bring up for our consideration the sufficiency of both the original and the amended complaints.

The original complaint asserted jurisdiction "by virtue of the provisions of Section 301[1] of the Labor Management

---

1. "Suits By And Against Labor Organizations

   "Sec. 301. (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

   "(b) Any labor organization which represents employees in an industry affecting commerce as defined in this Act and any employer whose activities affect commerce as defined in this Act shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an

Relations Act of 1947" (the Taft-Hartley Act) and 28 U.S.C.A. § 1332, alleging diversity of citizenship (plaintiff and all its members being citizens of New York and defendant a West Virginia corporation), together with the usual conclusory statement that "the amount in controversy herein, exclusive of interest and costs, exceeds the sum or value of $3000."

The charge was that Bove was vice-president of International Hod Carriers', Building and Common Laborers' Union of America, the parent international of the plaintiff local union, that Bove dominated and controlled the plaintiff and represented plaintiff and its members in collective bargaining with employers. It is alleged that, between August 28, 1939 and August 22, 1944, upwards of 400 workmen, members of the plaintiff, worked for defendant in the performance of a contract, between defendant and the Board of Water Supply of the City of New York for the construction of part of the Delaware Aqueduct Project, which provided for lower rates of pay and more dangerous and deleterious working conditions than would have been the case but for "a fraudulent, wrongful and illegal conspiracy," formed in July, 1939, between Bove and defendant, in the operation and pursuant to the terms of which defendant paid Bove a bribe of $36,000 and Bove caused the workmen to agree and they "agreed to and did, during the aforesaid period of time, render labor and services for the defendant at the aforesaid lower rate of wages and more dangerous and deleterious working conditions," and sustained other loss, "all to the damage of the plaintiff as the representative of its said members" in the sum of $600,000, the conspiracy not having been discovered until March 8, 1945. The parties stipulated that the "plaintiff has brought this action in a representative capacity on behalf of its members who were employed by defendant," and that "the damages sought * * * are and are limited to the damages sustained by those members of the plaintiff who were employed by the defendant as aforesaid."

Thus on the face of the original complaint it is clear beyond cavil that the action sounded in tort and that plaintiff had aggregated some 400 separate individual claims for damages amounting in all to $600,000, but considerably less than $3,000 apiece.

The amended complaint asserts jurisdiction on the same basis as before, re-alleges the making of the contract with the Board of Water Supply, the conspiracy with and the payment of the $36,000 bribe to Bove, and the rendition of services by the workers for lower rates of pay and under more dangerous and deleterious working conditions, with a slightly different choice of words here and there. What is claimed to be significantly new is: (1) the inclusion of allegations that the International, through Bove, negotiated with defend-

entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

"(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly author- ized officers or agents are engaged in representing or acting for employee members.

"(d) The service of summons, subpena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.

"(e) For the purposes of this section, in determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling." 29 U.S.C.A. § 185.

ant and executed a collective bargaining agreement fixing rates of pay and working conditions said to be lower and more dangerous and deleterious than would have been the case but for the conspiracy and the payment of the bribe, and that the collective bargaining agreement was executed "on behalf of the plaintiff and its members" and "the same was assigned by the International to the plaintiff"; (2) the inclusion of an allegation that defendant was "unjustly enriched" in the amount of the bribe of $36,000, and "the members of the plaintiff employed by the defendant as aforesaid were damaged at least in the said amount"; and (3) a prayer for relief "declaring and adjudging" that the collective bargaining agreement was made pursuant to the conspiracy and in consideration of the bribe, that "the members of the plaintiff" were damaged at least in the amount of $36,000, and "directing" that $36,000 be paid to plaintiff and that plaintiff hold the same "as trustee for its said members for distribution among them as their respective interests may ultimately appear." The parties again stipulated that the damages sought were limited to those sustained by the members of plaintiff who were employed by defendant in the performance of the contract with the Board of Water Supply.

Every event upon which plaintiff rests its claim for relief occurred prior to the passage of the Taft-Hartley Act in 1947.

Reversing the normal order, and doing so solely for the sake of clarity and to avoid repetition, we shall discuss last the question of jurisdiction over the subject matter of the action.

■ At the outset it is clear that at common law no cause of action whatever would have been vested in plaintiff as a matter of substantive law. See 3 Moore's Federal Practice (2d Ed.) pp. 1331–2. Nor did an unincorporated association such as plaintiff have any capacity to sue or be sued. Moffat Tunnel League v. United States, 1933, 289 U. S. 113, 118, 53 S.Ct. 543, 77 L.Ed. 1069.

There was no such separate entity known to common law procedure; and each and every member of the association was required to join or be joined as in the case of partners. Such is still the law in many state jurisdictions today, although it is quite common, as in New York, to find code or other statutory provisions permitting actions to be maintained by or against the president or treasurer or other officers of an unincorporated association.

■■ In addition to the limited general terms of Rule 17(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., on "Capacity to Sue or Be Sued", specific provisions are contained in Title III of the Taft-Hartley Act relative to "Suits by and against Labor Organizations." Section 301(a) serves the dual purpose of giving the United States District Courts jurisdiction to entertain and decide suits by labor unions "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * *, without respect to the amount in controversy or without regard to the citizenship of the parties", and also, by necessary implication, constituted such labor unions the trustees of recoveries in such actions for the benefit of such of the employees as might be entitled to the proceeds thereof. This Section 301(a) has been held to have created "a new substantive liability," and not applicable to breaches of contract which antedated June 23, 1947, when the Taft-Hartley Act was enacted. Schatte v. International Alliance of Theatrical Stage Employees, etc., 9 Cir., 1950, 182 F.2d 158, 164, certiorari denied, 1950, 340 U.S. 827, 71 S. Ct. 64, 95 L.Ed. 608, rehearing denied, 1950, 340 U.S. 885, 71 S.Ct. 194, 95 L.Ed. 643; Studio Carpenters Local Union No. 946 v. Loew's, Inc., 9 Cir., 1950, 182 F.2d 168, certiorari denied, 1950, 340 U.S. 828, 71 S.Ct. 64, 95 L.Ed. 608, rehearing denied, 1950, 340 U.S. 885, 71 S.Ct. 194, 95 L.Ed. 643.

■ The capacity provision, applicable generally to all suits by or against

labor unions, is contained in Section 301 (b), as follows: "Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States." This is followed, in the same and subsequent subdivisions of Section 301, by certain limitations concerning the enforceability of the judgment, venue, service of process and allied procedural matters, all of which together comprise a harmonious and consistent pattern, when Section 301 is considered as a whole.

The expansion of jurisdiction and the creation of the substantive right to maintain particular suits, which we find in Section 301(a), are strictly limited to those for violation of contracts, such, for example, as the collective bargaining contract negotiated here between the International and the defendant. We need not pause to consider whether a local union, as assignee, is intended to be included.

Nor is there anything ambiguous about the expression "as an entity and in behalf of the employees". These words merely round out and clarify the meaning of the sentence as a capacity statute and nothing more. No substantive rights whatever are affected thereby. The unincorporated association is recognized as "an entity," despite the fact that it acts and will sue or be sued only "in behalf of the employees whom it represents".

Plaintiff would have us construe these words as a blanket and retroactive grant of authority to unions to maintain in behalf of their members suits of any character, whether of tort or contract, and irrespective of the nature of the rights, obligations or duties involved, provided only that the litigation arises in some vague way "out of the employment relationship." This would indeed open a Pandora's box and the resulting evils and inconveniences would perhaps lead to unsatisfactory conditions reminiscent of those existing prior to the passage of the Portal-to-Portal Act of 1947, 61 Stat. 84, 29 U.S.C.A. § 251 et seq. Nothing short of a clear and positive mandate by the Congress could suffice to work such a revolutionary change. Cf. Elgin, J. & E. Ry. Co. v. Burley, 1945, 325 U.S. 711, 733–734, 65 S.Ct. 1282, 89 L.Ed. 1886, on rehearing, 1946, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928.

Moreover, it seems more than passing strange that the Congress should so carefully limit the clause, subdivision (a), to suits for violation of a particular type of contracts, and then, in subdivision (b), throw the door wide open to the maintenance by unions "in the courts of the United States" of actions to recover damages for private torts committed by the employer against individual employees, in the course of the "employment relationship," provided there were the requisite diversity of citizenship and the necessary amount in controversy. This flies in the face of common sense.

A careful appraisal of the natural and inevitable consequences of the adoption of plaintiff's interpretation of Section 301 makes it apparent that this view of its meaning is designed not as a reasonable construction of the statute, but is merely a distortion of its meaning to make it fit this case.

If a labor union is thus authorized to sue to recover damages recoverable by individual workers for separate torts, what is to become of the phrase "may sue or be sued"? If in the course of the "employment relationship" an employee does some private sabotage or assaults the manager or otherwise does damage to person or property, can it be intended that the union may be held liable? Plaintiff answers no. But the phrase is "sue or be sued"; a construction which in a given category of cases favors maintenance of the suit must likewise be applicable when the shoe is on the other foot.

Furthermore, the adoption of the interpretation of Section 301(b) which plaintiff presses upon us would raise a multiplicity of other questions, the answers to which are not to be found either in the crucial sentence relied on or any-

where else in the statute. It is not disputed that each of the individual workers who suffered loss through the operation of the alleged conspiracy could sue alone to recover his damages. Must such a suit be commenced before action is taken by the union? The claims of each of the 400 employees would seem to involve questions of law or fact common to his own claim and that of the others. Assuming that he could comply with the conditions prescribed in Rule 23(a) of the Federal Rules of Civil Procedure, and that, with diversity as here, the claim of each was in excess of $3,000, exclusive of interest and costs, one worker might choose to sue as a member of the class, for his own benefit and for the benefit of some or all of the others. Are all to be subordinated to the control of the union and thus compelled to leave the management of the litigation of their personal rights to the judgment of the attorney for the union? Suppose the union desired to press the claims of some but less than all the workers? Nothing in the views submitted for our consideration would seem to prevent the union from doing so. Nor is the operation of the doctrine of res judicata to the various phases of this problem free from serious doubt. Counsel tell us that the Congress intended that the right to sue be limited to the enforcement of obligations arising "out of the employment relationship." But this is pure assertion. No such words of limitation are to be found in Section 301(b). If Section 301 (b) is to be construed as anything more than a simple capacity statute, we can find no basis for construing it in such fashion as to justify this particular suit but to go no further. If the Congress intended the unions to be general litigating agencies for the workers, why not go the whole hog? These doubts and perplexities merely serve to emphasize the fact that the entire subject was one which the Congress chose to leave alone, except in the case of suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce, as provided in Section 301(a), and giving to such organizations generally the capacity to sue or be sued in the federal courts as provided in Section 301 (b).

The portion of Section 301(b) relied upon by plaintiff is a capacity statute pure and simple and goes no further. Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 1948, 167 F.2d 183, 187–188. Moreover, nothing in the legislative history of the Taft-Hartley Act has been called to our attention, nor has our own research revealed anything to indicate that the intention of the Congress was otherwise.

■ Nor need we tarry long over Rule 23 of the Federal Rules of Civil Procedure, applicable to class actions, and providing: "If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right * * * is * * * (3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought." As plaintiff is not a member of the class, Rule 23 is not applicable.

So much for procedure; and we turn to the substantive law phase of the case.

■ The pertinent part of Rule 17 of the Federal Rules of Civil Procedure provides: "Every action shall be prosecuted in the name of the real party in interest; but * * * a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought * * *."

It is elementary that the jurisdiction of the federal courts is neither enlarged nor restricted by this Rule, and that its purport is to require that the action be prosecuted in the name of the party, who, by the substantive law, has the right sought to be enforced. 3 Moore's Federal Practice (2d Ed.) pp. 1305, 1311.

Plaintiff claims that it has a right to sue because it is both "a party with whom or in whose name a contract has been made for the benefit of another" and "a party authorized by statute". But we have already seen that the only statute claimed to have any relevancy to the case, Section 301(b) of the Taft-Hartley Act, is a mere regulation of procedure, conferring no substantive rights whatever upon the union. And a consideration of the very considerable number of cases construing Rule 17 and its counterpart in various state Codes discloses nothing to support plaintiff's contention that the contract clause is applicable to actions to recover for torts if the suit "relates to the making of the contract or its performance." Here the claim sought to be enforced "relates" to the collective bargaining contract only in an incidental way. The gist of the action is the wrongful conduct of defendant in conspiring with Bove and bribing him as alleged. This is neither a suit to enforce the contract nor to recover for a breach thereof.

The elaborate argument concerning suits by the promisee of a third-party beneficiary contract expends itself without affecting the matter in hand. Where an employer enters into a collective bargaining agreement with a union, followed by individual wage contracts with the employees, and then fails to pay the wages agreed upon, or otherwise commits a breach of the agreement, it may well be that the collective bargaining agreement becomes part of the terms of employment and that either the union or the employee may sue in the federal courts—the union pursuant to the provisions of Section 301(a), irrespective of diversity or amount, and the employee only upon a showing of diversity and an amount in controversy over $3,000, exclusive of interest and costs. United Protective Workers of America v. Ford Motor Co., 7 Cir., 1952, 194 F.2d 997. Even this phase of the general problem is not free from doubt, where the union sues in the federal courts, despite the fact that Section 301(a) of the Taft-Hartley Act contains "a grant of federal-question jurisdiction and thus creates a federal, substantive right." See Association of Westinghouse Salaried Emp. v. Westinghouse Elec. Corp., 3 Cir., 1954, 210 F.2d 623, 625, certiorari granted, 1954, 347 U.S. 1010, 74 S.Ct. 868. But we are not concerned here with deciding who may sue for breach of the agreement alleged to have been wrongfully and conspiratorially negotiated by Bove, but rather with the substantive law question: in whom is vested the right to recover damages for the torts alleged to have been committed by defendant in breach of its duty to its several employees to refrain from wrongfully injuring them.

We conclude that there is nothing in Rule 17 to support plaintiff's substantive right to sue for the recovery of the damages sustained severally by the 400 employees.

Moreover, we must not forget that the rights of each of the employees whom plaintiff claims to represent came into existence long prior to the Taft-Hartley Act. A statute conferring no more than capacity to sue or be sued is remedial and may be given immediate effect; but plaintiff has not afforded us with any enlightenment on the subject of how the substantive law could be changed retroactively so as to vest in the union the rights claimed for it, without the plainest sort of statutory language requiring retroactive effect, Chew Heong v. United States, 1884, 112 U.S. 536, 559, 5 S.Ct. 255, 28 L.Ed. 770, and, even then, without raising constitutional questions, which could not lightly be brushed aside. We have already observed that the courts have refused to give retroactive effect to the provisions of Section 301(a). Schatte v. International Alliance of Theatrical Stage Employees, etc., Studio Carpenters Local Union No. 946 v. Loew's, Inc., supra.

The foregoing discussion of the procedural and substantive aspects of the case has left little to be said on the decisive subject of jurisdiction. As Section 301(b) merely gives unincorporated

labor organizations a status in the federal courts where commerce is affected, and as Section 301(a) confers jurisdiction, irrespective of the amount in controversy and the citizenship of the parties, only of suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce, there is no federal-question jurisdiction here; and plaintiff must fall back on diversity. But plaintiff is again confronted by an insurmountable obstacle. The claims sought to be enforced are several rather than joint, and no single claim amounts to more than a few hundred dollars. May these 400 claims be aggregated, to make up the necessary jurisdictional amount in controversy?

■ The controlling principles have long been settled. Whether the parties be several, or one suing in a representative capacity on behalf of others, the amounts claimed by or on behalf of each of those injured by the wrongful conduct of defendant may be aggregated only where those "having a common undivided interest, unite to enforce a single title or right". Thomson v. Gaskill, 1942, 315 U.S. 442, 62 S.Ct. 673, 675, 86 L.Ed. 951. And this is the established law even though the several claims are derived from a single instrument or arise as the result of a negligent or wrongful act which results in loss or damage to many persons. Pinel v. Pinel, 1916, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817; Clark v. Paul Gray, Inc., 1939, 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001.

■ While plaintiffs argues that the theory of the amended complaint, and the additional allegations therein contained, has changed the nature of the rights sought to be asserted in this case so that there is now "a common undivided interest" and "a single title or right," the amended complaint shows clearly on its face that this is not so. By asserting "unjust enrichment" in the amount of the bribe, reducing the ad damnum clause from $600,000 to $36,000, as "at least" the amount of the aggregate damage, and calling this a "fund" to which plaintiff is entitled "as trustee," plaintiff has merely added verbiage. There is no fund. The claim remains one on behalf of 400 separate individuals for the damage suffered by each due to the alleged tortious conduct of defendant in entering into the alleged conspiracy with Bove and paying him the bribe of $36,000.

Nothing to the contrary was held in Local Union No. 497 of Amalgamated Ass'n of Street & Electric Ry. Employees v. Joplin & P. Ry. Co., 8 Cir., 1923, 287 F. 473, where an action authorized by the terms of a Kansas statute was removed to the federal court and it was held that the requisite jurisdictional amount was involved because the statute authorized the maintenance of the suit "collectively" to recover the aggregate difference between the wages actually paid and those "found and determined" by the Kansas Court of Industrial Relations. As stated by Judge Sanborn, 287 F. at page 476, "The only controversy between the plaintiffs and the defendant is whether or not by reason of the order and finding of the industrial court the defendant was in legal effect adjudged to pay the plaintiffs the $7,271.47, or any of it."

Nor does anything contained in N.Y. Penal Law, Section 439, McK.Consol. Laws, c. 40, and Donemar, Inc. v. Molloy, 1930, 252 N.Y. 360, 169 N.E. 610, which seem to have little bearing on the case, alter the fact that the claims of each of the 400 odd employees, whom plaintiff claims to represent, are for the damages individually suffered by each of them by reason of defendant's tortious conduct. Here again, what is plainly a series of separate and distinct claims cannot be transmuted into "a single title or right" by the mere expedient of asking for less damages than each would be entitled to were he to have sued alone and casting the prayer for relief in the form of a declaratory judgment proceeding affecting the disposition of a so-called "fund."

Accordingly, even if the plaintiff had some right to recover on behalf of each of the 400 odd employees described in the

complaints, which we think not to be the case, it would still be plain on the face of the complaints that the District Court was wholly without jurisdiction of the subject matter of the action.

So much of the orders appealed from as dismisses the complaint and the amended complaint for lack of jurisdiction is affirmed.