UNITED STATES ex rel. UNITED BROTHERHOOD OF CARPENTERS & JOINERS LOCAL UNION NO. 2028, et al., Appellees,

v.

WOERFEL CORPORATION and Fidelity & Deposit Company of Maryland, a corporation, Appellants.

No. 76–1119.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 5, 1976.

Decided Dec. 14, 1976.

William A. Hill, Pancratz, Wold & Johnson, Fargo, N. D., for appellants.

Damon E. Anderson, Kessler & Anderson, Grand Forks, N. D., for appellees.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

ROSS, Circuit Judge.

Three labor unions brought this action under the Miller Act, 40 U.S.C. §§ 270a and 270b, to recover retroactive pay increases for their members based on an alleged collective bargaining agreement. The defendants are Woerfel Corporation, a prime contractor on a federal project for the construction of Safeguard Antiballistic Missile (ABM) launch sites in North Dakota, and its payment bond surety Fidelity & Deposit Company of Maryland. After a bench trial, the district court granted relief to the unions. The defendants appeal from this order. We reverse the judgment and remand for further proceedings.

In 1971, the federal government awarded construction contracts to Woerfel for the construction of ABM launch sites near Langdon, North Dakota. The plaintiff unions were authorized by their members to enter into collective bargaining negotiations with Woerfel. On June 2, 1971, representatives of the plaintiff unions met with representatives of Woerfel and requested the company to execute a Project Stabilization Agreement (PSA).[1] Jesse Hogg, a labor attorney and labor relations manager for Woerfel on the ABM project, refused to sign the PSA or any other union contract. Hogg said that the company's intention was to operate the project on an open shop

---

1. The PSA contained terms relating to hiring procedures, working conditions and wage and fringe benefits. A schedule attached to the PSA set forth job classifications, wage rates per hour and periodic wage increases.

basis. Hogg stated however that the company did not intend to pay wages or benefits lower than those being paid by other contractors on the project. No contract was ever signed. At trial, representatives of the plaintiff unions testified that they understood Hogg's statement to mean that Woerfel had bound itself to the wage terms fixed by the PSA.

Woerfel's conduct throughout the course of the project supported that understanding of the unions. Wage increases for 1971 and 1972, which were approved by the Construction Industry Stabilization Council (CISC),[2] were paid by Woerfel retroactively to the date fixed by the PSA. Furthermore, Woerfel used the hiring hall as one of its sources of labor on the project. And on at least one occasion, Woerfel officials referred to the PSA to help settle a dispute over wage classifications.

The dispute which gave rise to this cause of action arose in late 1973, as work on the ABM project was drawing to a close. Wage increases fixed by the PSA for May and June 1973, had been postponed pending CISC approval. In November 1973, when CISC approval was given, Woerfel instituted these wage increases prospectively, but refused to make them retroactive to the date fixed in the PSA. The unions filed this suit to recover these retroactive payments on behalf of their members who had been Woerfel employees but they did not obtain assignments from the individual employees.

*I. Real Party in Interest.*

The first issue raised on this appeal is whether the unions are the proper parties to prosecute Miller Act claims for wages owed to their members. Reading their contentions liberally, the unions argue that they have real party status under Fed.R. Civ.P. 17(a) to assert these claims on three theories: 1) the unions are persons who "furnished labor" under the Miller Act; 2) the unions are the proper parties to represent their members under the Labor Management Relations Act, 29 U.S.C. § 185(b); and 3) the unions may represent their members by virtue of their associational status. We hold that in their present posture, the unions are not the real parties in interest.

■ The Miller Act, 40 U.S.C. § 270a *et seq.*, requires a contractor on a government project to post a bond guaranteeing payment to suppliers of labor and materials for the project. Section 270b(a) allows "[e]very person who has furnished labor or material * * * *" to recover on the bond. In *F. D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116, 122, 94 S.Ct. 2157, 2161, 40 L.Ed.2d 703 (1974), the Supreme Court described the policy of the Act:

> Ordinarily, a supplier of labor or materials on a private construction project can secure a mechanic's lien against the improved property under state law. But a lien cannot attach to Government property, * * *, so suppliers on Government projects are deprived of their usual security interest. The Miller Act was intended to provide an alternative remedy to protect the rights of these suppliers. (Citation omitted.)

Thus the purpose of the Act is to permit a government contractor's "unpaid creditors" to realize the benefits of the bond. As stated in *Clifford F. MacEvoy Co. v. United States*, 322 U.S. 102, 107–108, 64 S.Ct. 890, 894, 88 L.Ed. 1163 (1944):

> The proviso of § 2(a), which had no counterpart in the Heard Act, makes clear that the right to bring suit on a payment bond is limited to (1) those materialmen, laborers and subcontractors who deal directly with the prime contractor and (2) those materialmen, laborers and sub-subcontractors who, lacking express or implied contractual relationship with the prime contractor, have direct contractual relationship with a subcontractor and who give the statutory notice of their claims to the prime contractor. *To allow those in more remote relation-*

---

**2.** The CISC was a labor-management public board which had power to withhold approval of wage increases in the construction industry.

ships to recover on the bond would be contrary to the clear language of the proviso and to the expressed will of the framers of the Act. (Emphasis added.)

We thus think it clear that the Miller Act was never intended to permit labor unions to prosecute claims for unpaid wages of their members, at least absent an assignment of those rights. The remedial objective of the Miller Act is to ensure payment for *services rendered* by a laborer or subcontractor on a government project. A collective bargaining contract, even where one is signed, is not a contract for the performance of services; it governs only the general rules of conduct between employer and employee. The right to the payment of money in this case remains with the individual employees for it is they, not the unions, who performed the services. In short, the unions are not "unpaid creditors" of the Woerfel Corporation. The unions have cited no authority, and independent research has turned up no authority, permitting unions to sue under the Miller Act absent assignments from the employees who performed the services. We decline to do so here.

The unions argue that § 301(b) of the Labor Management Relations Act, 29 U.S.C. § 185(b)[3] confers real party status on the unions to bring the instant Miller Act action. We disagree. While § 301(b) does give a union capacity to sue and be sued as an entity under the LMRA, it does not appoint the union as the general litigating agent of its members. *Cf. Rock Drilling Local Union No. 17 v. Mason & Hanger Co.*, 90 F.Supp. 539, 541–542 (S.D.N.Y.1950), *aff'd*, 217 F.2d 687, 693 (2d Cir. 1954), *cert. denied*, 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249 (1955); *Local Union No. 185 v. Copeland Electric Co.*, 273 F.Supp. 547, 549 (D.Mont.1967). Section 301(b) is simply a rule defining capacity to sue and does not give the unions a general right to represent its employees. *Cf. Rock Drilling Local Union No. 17 v. Mason & Hanger Co., supra*, 90 F.Supp. at 542–543.[4]

Nor are the unions the real parties in interest solely by virtue of their associational status, as the district court found. In *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Supreme Court recently narrowed the rights of an association to represent its members. In *Warth*, the intervenor Home Builders, an association consisting of residential construction builders, sued the town of Penfield, New York, alleging that certain zoning restrictions deprived some of its members of substantial business opportunities. Home

---

**3.** Section 301(b) of the LMRA, 29 U.S.C. § 185(b), provides in part as follows:

(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States.

**4.** A contrary interpretation would create a host of problems. In *Rock Drilling Local No. 17 v. Mason & Hanger Co.*, 90 F.Supp. 539 (S.D.N.Y. 1950), *aff'd*, 217 F.2d 687 (2d Cir. 1954), *cert. denied*, 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249 (1955), a union sued the company under § 301(b) claiming that the company bribed an officer of the union for the purpose of causing the union employees to accept lower wages in return for their services. The court held that the union was not the real party in interest under Fed.R.Civ.P. 17(a). The court held that § 301(b) did not appoint the union as a general litigating agent of its employees and articulated some of the problems that would be created by such a holding:

What categories of claims may the union assert? Shall it be limited to claims arising out of the employment relationship or may it prosecute all claims? Shall they be claims asserted only on behalf of all the members of the group or may claims be asserted on behalf of some—less than all—members of the group? What if one of the members of the group before or after action instituted by the union desires to assert his own claim? Is he obliged to commit his claim to the care of the union regardless of his wish to proceed independently? Is he bound by [a] judgment procured in the group action or is he free to disregard it? Is the defendant protected in paying a judgment secured by the group in favor of an individual or is it subject to the jeopardy of additional claims asserted by the individual?

*Id.* at 541.

Builders claimed, *inter alia*, $750,000 in damages. With respect to the damages claim, the Court stated:

> * * * [W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, *in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.*
>
> The present case, however, differs significantly as here an association seeks relief in damages for alleged injuries to its members. *Home Builders alleges no monetary injury to itself, nor any assignment of the damages claims of its members.* No award therefore can be made to the association as such. Moreover, in the circumstances of this case, the damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof. Thus, to obtain relief in damages, each member of Home Builders who claims injury as a result of respondents' practices must be a party to the suit, and Home Builders has no standing to claim damages on his behalf.

*Id.* at 515–516, 95 S.Ct. at 2213 (emphasis added and citations omitted). In this case, as in *Warth*, relief is sought by the unions in the form of damages, and the relief sought is not common to the entire membership nor shared by all in equal degree. Thus, some individual proof of the claims is required. No assignment of wages has been executed by the employees to the unions. These factors, we feel, bring the instant case squarely within the mandate of *Warth*, and prohibit the unions from asserting the claims of their members by virtue of their associational status.

## II. Remedy.

We reverse the judgment of the district court. In the interest of fairness however, we feel that the complaint should not be dismissed on remand. Our review of the record convinces us that the district court was not clearly erroneous in finding that Woerfel bound itself to pay its employees the retroactive wage increases.[5] The confusion on the real party issue in this case is at least understandable, if not excusable, in view of the paucity of authority on the subject.

We therefore remand this case in order to permit the district court to substitute the real parties in interest. The unions may acquire real party status by assignment of the wage claims of its members. *Cf. United States v. Carter*, 353 U.S. 210, 219, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957).[6]

The judgment is reversed and the case is remanded for further proceedings not inconsistent with the views expressed in this opinion.

---

5. Jesse Hogg admitted at trial that he told the union representatives that Woerfel did not intend to pay wages that were lower than those paid by other contractors on the project. Three union representatives testified at trial that they understood from Hogg's statement that the company was bound by the wage terms of the PSA. The company did pay the retroactive wage increases in 1971 and 1972, and thus manifested an intent to comply with the wage terms of the PSA.

6. On the current state of the record, we perceive no necessity at this late date of requiring a new trial. It appears that the proof on retrial would be purely repetitive. The district court may save the judgment by substituting the real parties. 3A J. Moore, Federal Practice ¶ 17.15–1, at 605 (2d ed. 1974).