*Burlington Educ. Associates v. Future Planning Associates*, No. 683-12-18 Wncv (Tomasi, J., Jan. 31, 2020).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 683-12-18 Wncv |

| | |
|---|---|
| Burlington Education Associates, et al.<br>  Plaintiffs<br><br> v.<br><br>Future Planning Associates, Inc.<br>  Defendant | |

Opinion and Order on Defendant's Motion to Dismiss

Plaintiffs consist of 30 specifically named local labor unions representing Vermont school employees affiliated with the National Education Association and the Vermont–National Education Association, which are also named plaintiffs. None of Plaintiffs' members (school district employees) are parties. Plaintiffs claim that the many school districts in which their members work contracted with Defendant Future Planning Associates, Inc., ("Future Planning") to administer their health insurance plans beginning on January 1, 2018. Plaintiffs assert that Future Planning administered those plans incompetently, causing financial and emotional harm to many of their members. They plead breach of contract and breach of the covenant of good faith and fair dealing based on the assertion that their members are intended third-party beneficiaries of the contracts between the relevant school districts and Future Planning. Plaintiffs also claim that Future Planning's conduct

violated Vermont's Consumer Protection Act (CPA), 9 V.S.A. §§ 2451–2481x, and they seek punitive damages.

Procedural and Factual Background

In earlier proceedings, Future Planning sought dismissal of all claims against it, arguing that Plaintiffs, as organizational (or associational) parties, lack constitutional standing to represent the interests of their members. The court denied the motion to dismiss on the basis asserted, reasoning that the case may raise a question about whether Plaintiffs are the real parties in interest, Vt. R. Civ. P. 17, but that, formally understood, there is no apparent constitutional standing question. *See* 13A Richard D. Freera and Edward H. Cooper, *Fed. Prac. & Proc. Juris.* § 3531 (3d ed.) ("Confusions of standing with real-party-in-interest doctrine occur with some frequency.").

Future Planning then filed a new motion to dismiss arguing that Plaintiffs are not the real parties in interest to the claims asserted against it. It seeks a determination of that issue with regard to all claims and a period of time to allow any real parties in interest to be substituted for the current plaintiffs prior to outright dismissal. *See* Vt. R. Civ. P. 17(a). It seeks dismissal of the CPA claim on the assertion that Plaintiffs' members are, at best, third-party beneficiaries of the contracts with Future Planning, and the CPA does not apply to third-party beneficiaries.

Plaintiffs argue that, as unions, they are empowered to represent their members' interests in this litigation, and they thus are real parties in interest with

2

regard to both contract and CPA claims against Future Planning. Plaintiffs did not address in writing Future Planning's argument that the CPA does not apply to third-party beneficiaries of contracts, although they noted at oral argument that they are not conceding the matter.

Plaintiffs' claims are predicated on the following facts. The underlying school districts have certain collectively bargained contractual obligations with regard to providing health coverage to the employee–members of Plaintiff-unions. The Plaintiffs negotiated and signed those bargained-for contracts. To aid in the provision of those benefits, relevant school districts independently contracted for particular services with Future Planning. Plaintiffs are neither parties to nor third-party beneficiaries of the contracts between the school districts and Future Planning. They claim, however, that relevant school employees are third-party beneficiaries of those contracts and were harmed by Future Planning's incompetence in the provision of those contracted-for services. On that basis, Plaintiffs claim the representational right to litigate the private interests of their members directly against third-party contractor Future Planning without the direct involvement of their employee–members or the school districts that contracted with Future Planning.

Analysis

"Every action shall be prosecuted in the name of the real party in interest." Vt. R. Civ. P. 17(a). "The effect of this passage is that the action must be brought by the person who, according to the governing substantive law, is entitled to enforce

3

the right." 6A Mary Kay Kane, *Fed. Prac. & Proc. Civ.* § 1543 (3d ed.). "[T]he modern function of the rule . . . is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." *Id.* (quoting Fed. R. Civ. P. 17 advisory committee's note to 1966 amendment).

In briefing, Plaintiffs assume without analysis that the burden of proof on the real party in interest issue falls to Future Planning. What little authority exists on this question is conflicting. *Contrast OSRecovery, Inc. v. One Groupe Intern., Inc.*, 380 F. Supp. 2d 243 (S.D.N.Y. 2005) (burden is on party purporting to be real party in interest because it must demonstrate a substantive right to recover) *with Lexington Ins. Co. v. Western Roofing Co., Inc.*, No. 03-2036-JWL, 2003 WL 22205614, at *1 (D. Kansas Sept. 23, 2003) (burden is on party opposing real party in interest status as matter is akin to affirmative defense). The Court declines to resolve this issue here. The real party in interest question in this case presents a legal issue, does not depend on disputed facts or inferences, and can be resolved on this record regardless how the burden may be allocated.

The general rule is that, "[a]bsent statutory authority . . . an association *is not* the appropriate party for bringing suit to assert the personal rights of its members." 6A Mary Kay Kane, *Fed. Prac. & Proc. Civ.* § 1552 (3d ed.) (emphasis added). Against that and in support of their claim to being real parties in interest in this case, Plaintiffs rely on case law largely arising out of Section 301 of the federal Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *See id.* §

4

185(b) ("Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States."). That section, however, allows such lawsuits principally against employers and others only in special circumstances clearly evincing a direct interest in enforcement of the terms of a collective bargaining agreement (CBA), such as successors-in-interest to employers, receiverships, or similar circumstances. *See Greater Lansing Ambulatory Surgery Ctr. Co., L.L.C. v. Blue Cross & Blue Shield of Michigan*, 952 F. Supp. 516, 520 (E.D. Mich. 1997) ("[O]nly those parties with an interest in the [CBA may] bring suit under § 301."); 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties."); *see generally* 12 Emp. Coord. Labor Relations §§ 53:33–53:67 (discussing variety of proper parties to Section 301 suits).

Plaintiffs assert that Section 301 has been interpreted to permit unions to sue to enforce contracts beyond mere CBAs, including "supplemental" and "subsidiary" agreements: "The existence of a supplemental or subsidiary agreement, specifically intended to effectuate the provision of benefits under the CBA, cannot logically divest the Association of its right and duty to litigate enforcement of its members' rights to those benefits." Plaintiffs' Opposition at 3 (filed Aug. 26, 2019). Plaintiffs have come forward, however, with *no* authority meaningfully supporting this proposition as they employ it in this case, in the context of an employer

5

contract, to which neither the union nor its member–employees are parties, with a third-party service provider who is not a signatory to the CBAs. They rely generally on *Intl. Union, United Auto., Aerospace and Agr. Implement Workers of Am. (UAW), AFL-CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696 (1966); *Smith v. Evening News Ass'n*, 371 U.S. 195 (1962); *J.I. Case Co. v. N.L.R.B.*, 321 U.S. 332 (1944); and *Off. & Prof. Employees Intern. Union, Loc. 2 v. F.D.I.C.*, 962 F.2d 63 (D.C. Cir. 1992).

In *J.I. Case Co.*, the U.S. Supreme Court explained that a CBA typically controls conditions of employment though individual employees nevertheless will have separate, congruent employment contracts with the employer. 321 U.S. at 335–36 ("In the sense of contracts of hiring, individual contracts between the employer and employee are not forbidden, but indeed are necessitated by the collective bargaining procedure."). Based on the dual contractual nature of such arrangements, the Court ruled that an employer could not rely on the existence of one (employment contracts with specific employees) to refuse to negotiate over the other (collective bargaining on related terms). It affirmed a ruling of the National Labor Relations Board (NLRB) to that effect. *See id*. 341–42.

In *Evening News*, the district court had dismissed a Section 301 claim brought by an employee against an employer for a violation of the CBA, ruling that the employee alleged an unfair labor practice within the *exclusive* jurisdiction of the NLRB. *Evening News*, 371 U.S. at 197. The Supreme Court ruled, however, that the NLRB's jurisdiction over unfair labor practices is not exclusive of jurisdiction in federal court under Section 301. *Id.* The Court also determined that the claim

6

*against the employer* did not fall outside the scope of Section 301 merely because it sought to vindicate rights personal to employees—unpaid wages. It ruled that, regardless whether those rights are "personal," they *also* arise under the CBA and fall within the scope of Section 301. *Id.* at 200 ("The rights of individual employees concerning rates of pay and conditions of employment are a major focus of the negotiation and administration of collective bargaining contracts.").

*Hoosier Cardinal* called upon the Court to determine whether, *in a suit between a union and an employer*, both parties to a CBA, there is a time limitation applicable to Section 301 claims, although that is not the issue relevant here. As a preliminary matter, the Court summarily concluded that the wage and vacation pay claim at issue properly fell within Section 301 regardless that it may be considered to have arisen under the CBA as well as under each employee's employment contract. *Hoosier Cardinal*, 383 U.S. at 700 ("This conclusion is unimpaired by the fact that each worker's claim may also depend upon the existence of his individual contract of employment." (citing for this principle both *J.I. Case Co.* and *Evening News*)).

*J.I. Case Co.*, *Evening News*, and *Hoosier Cardinal* make clear that while the heart of a Section 301 action is enforcement of the terms of a CBA between the union or the employees it represents and the employer, such actions can touch on personal rights of the employees that are integral to the CBA but that are also grounded in separate contracts directly between the employer and the employee. All three cases were suits between employees or a union and the employer, and at

7

issue in each were the contractual rights between them. None of these cases supports the proposition urged by Plaintiffs that Section 301 somehow enables a union to sue any third-party with a contract with the employer if that contract in some way has an effect on employees or rights of employees related in some fashion to a CBA.

In the *F.D.I.C.* case, the D.C. Circuit Court of Appeals addressed a dispute involving a "unionized bank put into receivership under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) § 212, 12 U.S.C. § 1821." *F.D.I.C.*, 962 F.2d at 64. The union filed two "group claims" with the F.D.I.C. receiver on behalf of member–employees for severance benefits and accrued vacation pay. *Id.* The receiver rejected the claims as advanced by the union, taking the position that it would accept claims by individual employees only. The union sued and the district court ruled that, under FIRREA, the union was not a creditor of the bank and thus could not be a claimant. The Circuit Court reversed, reasoning that Section 301 permits the union to do more than simply enforce a CBA in the context of employer insolvency. "Most germane to the issue we confront," it explained, "bankruptcy courts recognize a union's authority to pursue, after the debtor's rejection of a labor agreement, employees' collectively bargained rights to wages and benefits." *Id.* at 66.

In response to the objection that Section 301 is more strictly limited to suing on the CBA, the Court then said, "[c]ase law, however, sets this guiding principle: when a claim derives from a collective bargaining agreement—an arrangement

8

negotiated by a union and to which it is a signatory—the labor organization is an appropriate party (although not the only appropriate party) to vindicate employees' rights." *Id*. Hence, under Section 301, the union could seek to enforce the rights that had been in the CBA under FIRREA even though the CBA had been set aside and the bank was in receivership. The case arose out of a claim presented to a receiver; it did not address whether an improper party had been sued.

Plaintiffs, however, seize on *F.D.I.C.'s* "guiding principle" and seek to apply it here in a completely different context. In their view, the rights at issue in this case "derive from" CBAs in the sense that the various employers contracted with Future Planning to provide services that affect their employees' health care benefits and those benefits were the subject of the CBAs. Nothing in the *F.D.I.C.* case, however, supports Plaintiffs' boundless interpretation of Section 301 that would enable them to sue any third party with a contract with the employer if that contract in some way has an effect on employees or rights of employees that have some connection to the terms of a CBA. The *F.D.I.C.* decision plainly addresses the effect of Section 301 in the context of a FIRREA receivership after the CBA has been rejected. That case is not analogous to this one and has no application here.

Indeed, Plaintiffs' application of *F.D.I.C.* and the U.S. Supreme Court case law on which it is based is substantially overbroad, and Plaintiffs have come forward with no authority that would extend Section 301 to cases such as this one. To the extent Plaintiffs are seeking to enforce rights in the relevant CBAs, they have not sued the school district–employers that they presumably believe have

breached them.  In any event, Future Planning has no connection to any of the underlying CBAs and it does not stand in the shoes of any school districts in relation to any rights relating to the CBAs.

Future Planning simply has no legal interest whatsoever in the CBAs and Plaintiffs have no cognizable right to enforce CBA rights against Future Planning. Any "rights" or obligations in the contracts between Future Planning and the school districts are enforceable by appropriate parties under ordinary contract law, not Section 301.  In that regard, this case is similar to *Loc. Union No. 185, Intern. Broth. of Elec. Workers v. Copeland Elec. Co.*, 273 F. Supp. 547 (D. Mont. 1967).  In *Copeland*, a union brought an action against, among others, the third-party company, U.S.F. & G., that furnished the employer with a performance bond related to a particular project.  The union was not a party to the bond contract.  It relied on Section 301, however, as a legal basis for suing U.S.F. & G. directly even though, as here, the defendant was a mere third-party contractor with the employer and had no direct interest in or connection to the CBA.  The Court dismissed the claim as follows:

> As the case affects U.S.F. & G., the plaintiff [union] is not the real party in interest.  As against U.S.F. & G., the plaintiff can claim no rights which flow from the Labor Management Relations Act or the collective bargaining agreement for itself or for its members.  *Any rights to be asserted against U.S.F. & G. must be found in the performance bond.*  The court expresses no opinion as to whether the obligations to pay created by the bond are co-extensive with the obligations created by the collective bargaining agreement.  *If they are, it is simply coincidental because the bond does not guarantee the collective bargaining agreement.*

10

*Id.* at 549 (footnote omitted; emphasis added). The same is so here: any rights to be asserted against Future Planning must be sourced from the contracts between Future Planning and the school districts. Plaintiffs' argument that the claims at issue in this case are merely derivative of the rights set out in the CBA is not persuasive and would wash Section 301 well beyond its banks.

Other courts have rejected such overbroad applications of Section 301. For example, in *Rock Drilling, Blasting, Roads, Sewers, Viaducts, Bridges, Foundations, Excavations & Concrete Work on All Const., Hod Carriers', Bldg. & Com. Laborers' Loc. Union No. 17 v. Mason & Hanger Co.*, 217 F.2d 687 (2d Cir. 1954), a union attempted to sue several employers on behalf of hundreds of employees claiming diminution of wages and poor working conditions resulting from a conspiracy between the employer and an agent of the parent–union. The Court made clear that the claims sounded in tort. *Id.* at 690. They thus could not be properly framed under Section 301. Section 301 is not a "blanket . . . grant of authority to unions to maintain on behalf of their members suits of any character, whether of tort or contract, and irrespective of the nature of the rights, obligations or duties involved, provided only that the litigation arises in some vague way 'out of the employment relationship.'" *Id.* at 692. The Court rejected any argument that the claim fell within Section 301 simply because it "relates to" the CBA: "Here the claim sought to be enforced 'relates' to the collective bargaining contract only in an incidental way. The gist of the action is the wrongful conduct of defendant in conspiring with [conspirator] and bribing him as alleged. This is neither a suit to enforce the

11

contract nor to recover for a breach thereof." *Id*. at 694. A mere incidental connection to a CBA is insufficient under Section 301.

Similarly, in *U.S. ex rel. United Broth. of Carpenters and Joiners Loc. Union No. 2028 v. Woerfel Corp.*, 545 F.2d 1148, 1151 (8th Cir. 1976), three unions attempted to litigate claims for retroactive pay increases against the employer and its payment bond surety under the Miller Act (which requires payment bonds on governmental projects). The Court ruled that the claims, as advanced by the union, were not cognizable under the Act because the union could not claim to be in the position of an "unpaid creditor." *Id*. at 1151. The union's argument under Section 301 fared no better. "While § 301(b) does give a union capacity to sue and be sued as an entity under the LMRA, it does not appoint the union as the general litigating agent of its members. Section 301(b) is simply a rule defining capacity to sue and does not give the unions a general right to represent its employees." *Id*. at 1151 (citations omitted). Again, it is insufficient under Section 301 to merely assert that the claim being advanced has some relation to the rights in a CBA.

Plaintiffs also cite to Vermont's Labor Relations for Teachers and Administrators Act (LRTAA), 16 V.S.A. §§ 1981–2028, for evidence of the breadth of their representational authority. In the Court's view, nothing in the LRTAA arguably gives Plaintiffs real-party-in-interest status in an action like this one.

As a result, Plaintiffs are not the real parties in interest in this case with regard to their contract or covenant of good faith claims as framed against Future

12

Planning.[1]  Plaintiffs have failed to explain how they nevertheless could be real parties in interest with regard to their CPA claim, and the Court is unable to see any way in which that could be so.

If only by way of analogy, the Court notes that Plaintiffs fare no better under formal standing analysis.  "An association has standing to bring suit on behalf of its members when (1) its members have standing individually; (2) the interests it asserts are germane to the organization's purpose; and (3) the claim and relief requested do not require the participation of individual members in the action." *Parker v. Town of Milton*, 169 Vt. 74, 78 (1998) (*citing Hunt v. Washington State Apple Adver. Comm.*, 432 U.S. 333, 343 (1977)).  Assuming the first two prongs of the test could be met, there is no cogent way that the third could be.  At a minimum, each employee's claim necessarily would be subject to an employee-specific proof, including with regard to damages.  In fact, Plaintiffs' Complaint expressly alleges that the purported misconduct in this case impacted its members in different and highly individualized ways: some employees received debit cards for healthcare savings arrangements and flexible spending arrangements while some did not, some debit cards worked while others did not, and some had the wrong names on them; some employees were improperly billed for medical services; some medical providers refused to provide services after not being paid; some employees

---

[1] Given the Court's determinations, it is unnecessary to address whether Plaintiffs' member–employees may be third-party beneficiaries of the contracts with Future Planning, and thus capable as such of enforcing those contracts against Future Planning, because no employees are parties to this case.

13

had to go without necessary medical care; some employees with expensive prescriptions were unable to afford them out of pocket, and some suffered adverse health effects as a result; some employees were forced to pay for care on personal credit cards; some were referred to debt collectors because they could not afford the expenses; and some employees had to forgo other necessary expenses, such as for housing, food, and childcare, in favor of paying for medical care. *See* Complaint 5–6.

Plaintiffs object that the third prong of the *Hunt* test is prudential rather than constitutional, citing *United Food and Com. Workers Union Loc. 751 v. Brown Group, Inc.*, 517 U.S. 544 (1996). That determination in *Hunt*, however, was used by the Court to avoid concluding that a statute that otherwise would have violated the third prong is unconstitutional. *Id.* at 558 ("Because Congress authorized the union to sue for its members' damages, and because the only impediment to that suit is a general limitation, judicially fashioned and prudentially imposed, there is no question that Congress may abrogate the impediment."). That the prong is "prudential" does not mean that the Court should simply disregard it. Prudential limitations on standing are "designed to deny standing as a matter of judicial prudence rather than constitutional command." 13A Edward H. Cooper, *Fed. Prac. & Proc. Juris.* § 3531.7 (3d ed.); *see also Hinesburg Sand & Gravel Co., Inc. v. State*, 166 Vt. 337, 341 (1997) ("Standing embodies a core constitutional component and a prudential component of self-imposed judicial limits."). The third prong of the *Hunt* test would counsel strongly in favor of a determination that Plaintiffs lack standing in this case.

14

In sum, Plaintiffs are not the real parties in interest in this action. It is unnecessary to address Future Planning's additional argument for dismissal of the CPA claim at this time, because there is no appropriate party presently advancing the CPA.

Rule 17(a) provides that an action shall not be dismissed "on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed" for joinder or substitution of any real parties in interest. Accordingly, while Future Planning's motion is granted, this case will not be dismissed before any real parties in interest have a fair chance to join the litigation.

<u>Conclusion</u>

For the foregoing reasons, Future Planning's motion to dismiss is granted to the extent that the Court determines that Plaintiffs are not real parties in interest to this case. The case will be dismissed in 30 days unless real parties in interest join this litigation as parties plaintiff.

Dated this __ day of January 2020 at Montpelier, Vermont.

_____
Timothy B. Tomasi,
Superior Court Judge

15