Thomas **MENHORN**, Plaintiff-Appellant,

v.

**FIRESTONE TIRE & RUBBER CO.,**
**Defendant-Appellee.**

**No. 82–6084.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 5, 1983.

Decided Aug. 3, 1984.

Richard J. Cantrell, Cantrell, Green & Pekich, Long Beach, Cal., for plaintiff-appellant.

Sheila S. Kato, Grossman & Kato, Los Angeles, Cal., for defendant-appellee.

Before FERGUSON and BOOCHEVER, Circuit Judges, and SCHWARZER,* District Judge.

SCHWARZER, District Judge.

## FACTS

Thomas Menhorn appeals from a judgment upholding Firestone Tire & Rubber Company's denial of Menhorn's application for benefits under Firestone's employee retirement plan. Menhorn was employed by Firestone at its Akron, Ohio, plant from October 26, 1953, until he resigned on August 11, 1967, to move to California. Although Menhorn alleged otherwise in his complaint, uncontradicted declarations filed in support of Firestone's motions below establish that Menhorn was informed before his resignation that he would not receive credit for his years of service in Akron should Firestone reemploy him in California. Menhorn was in fact rehired at Firestone's Los Angeles plant on August 16, 1967, where he worked until he was laid off on June 13, 1980.

Under the terms of Firestone's employee benefit plan then in effect, retirement credits accumulated by an employee vested after fifteen years of service; termination of service prior to vesting resulted in a loss of those credits. Thus when Menhorn applied for benefits under the plan after being laid off in 1980, Firestone denied the application. While Menhorn claimed credit for the full twenty-seven years he had worked for Firestone, Firestone under the plan treated him as having worked for two periods of about thirteen and a half and twelve and three quarters years respectively, neither amounting to the fifteen years' continuous service required for the credits to vest.

In June 1981, Menhorn filed an action in state court against Firestone for breach of an oral contract, but voluntarily dismissed it in July 1982. He then filed this action in the court below, alleging violation of fiduciary duties under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.*, breach of contract, and estoppel. Firestone moved to dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), or alternatively for summary judgment. It contended, among other things, that the district court lacked subject matter jurisdiction because Menhorn's claim did not arise under ERISA. It also argued that Menhorn had failed to state a claim because he had failed to exhaust his internal remedies under the plan. Firestone's motion for

---

* Honorable William W. Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

summary judgment was supported by declarations which Menhorn did not contradict.

The district court granted Firestone's motion for summary judgment on the merits, holding that Firestone, as the administrator of the plan, had not acted arbitrarily or capriciously in refusing to credit Menhorn with his full length of service, and that Menhorn was therefore not entitled to recover. The court did not address the question of subject matter jurisdiction.

On this appeal, the legal positions of the parties are reversed. Menhorn now contends that the district court lacked jurisdiction and that, even if it had jurisdiction, it abused its discretion in failing to dismiss for failure to exhaust internal remedies.

## DISCUSSION

This appeal raises a question concerning the scope of district court jurisdiction over claims asserted under ERISA. Menhorn's action is brought under 29 U.S.C. § 1132(e)(1), which vests jurisdiction in the district courts over actions by participants in employee benefit plans to obtain equitable relief to redress violations of the Act. He seeks relief based on allegations that Firestone violated its fiduciary duties by denying him benefits after assuring him it would not do so.

■ Menhorn's cause of action accrued in 1980, when his claim for benefits was formally denied. But all the operative acts and omissions forming the basis for Menhorn's claim and Firestone's denial occurred before January 1, 1975, ERISA's effective date. The narrow issue this appeal raises, then, is whether the accrual of Menhorn's cause of action subsequent to ERISA's January 1, 1975, effective date is sufficient to give the district court jurisdiction over the action when that action is based wholly on events occurring before the effective date. We hold that it is not.[1]

*The statutory scheme*

In determining whether Congress conferred jurisdiction over such actions on the district courts, we consider first the purpose and policies underlying ERISA. That statute established a comprehensive and nationally uniform system of rules and standards governing, among other things, the conduct of fiduciaries in the administration of employee benefit plans. The Conference Committee Report notes:

Under the conference agreement, civil actions may be brought by a participant or beneficiary to recover benefits due under the plan, to clarify rights to receive future benefits under the plan, and for relief from breach of fiduciary responsibility. The U.S. district courts are to have exclusive jurisdiction with respect to actions involving breach of fiduciary responsibility as well as exclusive jurisdiction over other actions to enforce or clarify benefit rights provided under title I [the remedial provisions described below, now codified at 29 U.S.C. §§ 1021–1114]. However, with respect to suits to enforce benefit rights under the plan or to recover benefits under the plan which do not involve application of the title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction. All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947.

H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 5038, 5109. *See also* 120 Cong.Rec. S 15737, *reprinted in* 1974 U.S. Code Cong. & Ad.News 5177, 5188 (statement of Sen. Williams).

In ERISA, Congress adopted numerous statutory provisions specifying, for example, requirements for disclosure and report-

---

1. Neither party came forward with facts, either in the district court or on appeal, sufficient to sustain jurisdiction on the basis of diversity of citizenship. We decline to speculate whether diversity would provide a basis for jurisdiction of this action independent of federal question jurisdiction.

ing, 29 U.S.C. §§ 1021–1031; minimum standards for participation, vesting, and funding, *id.* §§ 1051–1086; and rules governing fiduciary conduct and liability, *id.* §§ 1101–1114. Included among the fiduciary rules relevant to this action are provisions governing, for example, the form and documentation of employee benefit plans, *id.* §§ 1102–1103; qualifications and bonding requirements for fiduciaries, *id.* §§ 1111–1112; prohibitions on certain transactions by plan fiduciaries, *id.* §§ 1106–1108; and fiduciary liability, *id.* §§ 1104, 1109–1110.

But Congress realized that the bare terms, however detailed, of these statutory provisions would not be sufficient to establish a comprehensive regulatory scheme. It accordingly empowered the courts to develop, in the light of reason and experience, a body of federal common law governing employee benefit plans. That federal common law serves three related ends. First, it supplements the statutory scheme interstitially. *See* Mishkin, *The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision*, 105 U.Pa.L.Rev. 797, 799–800 (1957). Second and more generally, it serves to ramify and develop the standards that the statute sets out in only general terms. For example, ERISA provides that a fiduciary is to discharge his duties

> with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims....

29 U.S.C. § 1104(a)(1)(B). The detailed construction and application of this standard Congress put in the hands of the federal courts by authorizing in general terms, and granting exclusive federal jurisdiction over, civil actions by plan participants to obtain relief for violations of the terms of the plan or of ERISA. *Id.* §§ 1132(a)(3); 1132(e)(1). Third, Congress viewed ERISA as a grant of authority to the courts to develop principles governing areas of the law regulating employee benefit plans that had previously been the exclusive province of state law. For example, no provision of ERISA mentions the circumstances under which a plan participant or beneficiary is entitled to recover disputed benefits from a plan, but § 1132(a)(1)(B) authorizes such a person to bring a civil action to recover benefits or to enforce or clarify rights to past or future benefits under the terms of a benefit plan. A Senate conferee noted Congress's "inten[t] that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." 120 Cong.Rec. S 29942 (Aug. 22, 1974) (statement of Sen. Javits).

In this context, the meaning of the congressional reference to § 301 of the Labor-Management Relations Act in ERISA's legislative history, quoted above, becomes clear. Section 301 has been treated as a congressional authorization for the federal courts to develop a federal common law concerning the construction and enforcement of collective bargaining agreements:

> The Labor Management Relations Act expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem. Federal interpretation of the federal law will govern, not state law. But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights.

*Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957) (citations omitted). In the context of its adoption of a federal

scheme to regulate employee benefit plans, Congress has expressed an identical intent. The courts are directed to formulate a nationally uniform federal common law to supplement the explicit provisions and general policies set out in ERISA, referring to and guided by principles of state law when appropriate, but governed by the federal policies at issue. To effectuate this purpose, Congress granted the federal courts jurisdiction, in part exclusive, in part concurrent with state courts, over matters falling within ERISA's explicit provisions or this supplementary federal common law.[2]

### Determining the governing law

It is clear, then, that ERISA represents a congressional mandate for the creation and enforcement of a comprehensive and nationally uniform regulatory scheme intended to supplant diverse state regulation of the field. Accordingly, 29 U.S.C. § 1144(a) provides that, generally, ERISA "shall supersede any and all State laws ... relat[ing] to any employee benefit plan ...."

But ERISA's drafters recognized that it would be unfair to judge pre-ERISA conduct retrospectively by ERISA's standards. *See, e.g., Quinn v. Country Club Soda Co.,* 639 F.2d 838, 840 (1st Cir.1981); *Bacon v. Wong,* 445 F.Supp. 1189, 1191–92 (N.D.Cal.1978). 29 U.S.C. § 1144(b)(1) therefore provides that ERISA's preemption of state law under § 1144(a) "shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." The plain terms of subsection (b)(1) preserve the application of state law to any cause of action accruing before January 1, 1975, as well as to any act or omission occurring before that date. For that reason we must determine whether state or preemptive federal law governs Menhorn's action by looking both to the time when that cause of action accrued and to the time when the conduct that formed the basis for the claim occurred. These are separate inquiries informed by different principles.[3]

---

**2.** Congress's enforcement scheme vests jurisdiction over most types of ERISA civil actions, *see* 29 U.S.C. §§ 1132(a)–(c), exclusively in the federal courts. *Id.* § 1132(e)(1). Jurisdiction over actions brought under *id.* § 1132(a)(1)(B) to recover benefits or enforce rights under a plan, however, is vested concurrently in state and federal courts. *Id.* § 1132(e)(1). Congress's choice to vest jurisdiction over one class of ERISA civil actions in both the state and federal courts is in no way inconsistent with its intent to create a comprehensive scheme of federal common law in the area. State as well as federal courts may be expositors of federal law. *See, e.g., Allen v. McCurry,* 449 U.S. 90, 103–05, 101 S.Ct. 411, 419–20, 66 L.Ed.2d 308 (1980); *Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat.) 304, 340–42, 4 L.Ed. 97 (1816). Moreover, Congress's choice to grant the state courts concurrent jurisdiction over this particular class of cases squares with its overall legislative goals. Actions to recover benefits or enforce rights under the terms of a plan will typically involve the application of those general principles of contract law with which the state courts have had substantial experience before ERISA; their expertise qualifies them to evaluate these rules in the light of ERISA's policies and apply federal common law. Congress simply increased the number of forums to which a claimant might have access in these cases, presumably both to increase the claimant's options and also to mitigate to some degree the burden on the federal courts resulting from ERISA. Either party of

course retains the right of access to a federal forum in actions ERISA governs irrespective of diversity of citizenship or amount in controversy, plaintiff by filing there, 29 U.S.C. § 1132(e)(1), and defendant by removing, 28 U.S.C. § 1441.

**3.** The dissent, in rejecting the notion that "when a cause of action arises after ERISA's effective date, federal jurisdiction is precluded because part of the cause of action is based on pre-ERISA acts or omissions," fails to recognize this distinction. It assumes that a cause of action accruing after ERISA's effective date will always invoke federal law to review the event (in this case Firestone's denial of benefits) that triggered accrual. As we point out below, however, determining the preemption effect of the time of accrual, and determining the preemption effect of pre-ERISA conduct material to the claim, are different issues subject to different considerations.

Determination of the time of accrual reflects principally considerations of fair notice to plaintiffs (protecting unwary litigants against the inadvertent loss of benefits through the running of the statute of limitations), and judicial economy (avoiding premature or piecemeal litigation). Determination of the preemption effect of material pre-ERISA conduct reflects principally considerations of fairness to defendants (avoiding retroactive application of remedial principles not in effect at the time of the conduct in question). Because of the differing

■ *Accrual of the cause of action.* We accept the proposition that an ERISA cause of action based on a denial of benefits accrues at the time the benefits are denied. This rule reflects a concern that it would be burdensome and unfair to require lay participants and beneficiaries to be constantly alert for possible errors or abuses that might give rise to a claim and start the statute of limitations running. It also seeks to avoid the burden on the judicial system of multiple actions, some of which might be premature. *See Morgan v. Laborers Pension Trust Fund,* 433 F.Supp. 518, 522 n. 5 (N.D.Cal.1977). *See also Paris v. Profit Sharing Plan,* 637 F.2d 357, 361 (5th Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *Quinn v. Country Club Soda Co.,* 639 F.2d 838, 840 (1st Cir.1981); *Winer v. Edison Bros. Stores Pension Plan,* 593 F.2d 307, 312 (7th Cir.1979); *Riley v. MEBA Pension Trust,* 570 F.2d 406, 411–12 (2d Cir.1977).

Menhorn applied for and was denied benefits in 1980. His cause of action (if any) therefore accrued at that time, subsequent to the January 1, 1975, effective date of ERISA.

■ *Conduct giving rise to the claim.* But § 1144 also precludes ERISA preemption of state law with respect to pre-ERISA conduct. This court has previously discussed this aspect of § 1144(b)(1) in *Lafferty v. Solar Turbines Int'l,* 666 F.2d 408 (9th Cir.1982) (per curiam). We acknowledged there that ERISA would not apply where "the acts after the preemption date were merely formalities adjunct to a set of acts before the preemption date which were more substantially related to the cause of action." *Id.* at 410. In such cases, the post-effective date denial of benefits will only trigger accrual of the cause of action, while the substantial conduct forming the basis of the action will have predated ERISA. This situation, in other words, will satisfy the "cause of action" clause of § 1144(b)(1), but not the "act or omission" clause. Because § 1144(b)(1) precludes preemption if *either* clause applies, such actions will be governed by the state law that prevailed at the time of the relevant conduct. Thus in cases where a claimant is formally denied benefits after ERISA's effective date pursuant to an unambiguous and nondiscretionary plan provision adopted before the effective date, the denial is not reviewable under ERISA. *See, e.g., Cowan v. Keystone Employee Profit Sharing Fund,* 586 F.2d 888, 895 (1st Cir.1978) (state law held to govern challenge to post-effective date denial of benefits where denial was necessary result of application of nondiscretionary and self-executing terms of plan adopted before effective date). The result is the same where a post-effective date formal denial is the inevitable result of unequivocal pre-effective date interpretations of or exercises of discretion under the plan.[4] *See e.g., Quinn v. Country Club Soda Co.,* 639 F.2d 838, 840–41 (1st Cir.1981) (state law held to govern challenge to post-effective date denial of benefits where denial was "inexorable consequence[ ]" of numerous pre-effective date communications to claimant stating he was excluded from participation in the plan). *Cf. Freeman v. Jacques Orthopaedic & Joint Implant Surgery Medical Group, Inc.,* 721 F.2d 654, 656 (9th Cir. 1983).[5]

interests at stake, therefore, the post-ERISA event triggering plaintiff's right to sue (i.e. accrual) may be only a formality (such as an official denial of benefits), while the events actually at issue in the litigation, having occurred long before, must be judged under pre-ERISA state-law principles. In these limited circumstances, Congress provided neither governing federal law nor a federal forum to enforce it.

4. In either case, of course, the claimant would retain whatever rights he may have had under state law and may enforce them in state court.

5. In *Freeman,* a former employee who had terminated employment after ERISA's effective date sought to bring an action under ERISA on the ground that he had been fraudulently induced to waive his right to participate in his former employer's benefit plan. The events surrounding the waiver had all occurred before ERISA's effective date. This court found that the district court had had no jurisdiction to entertain the action because plaintiff, having executed a waiver, was not a "participant" in an employee benefit plan and thus had no standing

The action at bar falls within this class of cases. In granting Firestone's motion for summary judgment, the district court found that all relevant events, except Menhorn's request for benefits, occurred prior to January 1, 1975 (ERISA's effective date), and that Firestone's denial of Menhorn's claim in 1980 "was merely the 'inexorable consequence'" of its prior adoption of the break-in-service policy and its admonitions to him at the time of his relocation to California. While in reviewing a summary judgment we are not necessarily bound by the findings below, *see Heiniger v. City of Phoenix*, 625 F.2d 842, 843–44 (9th Cir.1980), we accept them here in the absence of any dispute. *See* Fed.R.Civ.P. 56(e).[6] Although Menhorn's cause of action did not accrue until 1980, clearly the substantial acts giving rise to it occurred at the latest in 1967, when he was told that his resignation would terminate his service

credits and would preclude him from receiving benefits based on his prior service. The subsequent denial of benefits in 1980 was simply the "inexorable consequence" of the position Firestone had taken years before; it involved no exercise of discretion under or interpretation of the plan. Any claim of breach of fiduciary duty would therefore have to be based on Firestone's actions in 1967. All of the relevant conduct on the basis of which liability must be assessed having occurred prior to January 1, 1975, § 1144(b)(1) requires that the state law in effect at the time of the conduct govern Menhorn's claim.

Cases such as the one at bar must be distinguished from those in which benefits have been denied as the result of a significant act of discretion under or interpretation of the plan which took place after ERISA's effective date. A plan provision requiring discretion or interpretation does

---

to bring suit under § 1132(a). Plaintiff's sole remedy under the circumstances was a state-law action for fraud against those upon whose alleged misrepresentations plaintiff had relied. 721 F.2d at 656. As an alternative ground for the decision, the opinion relied on the *Lafferty* test, stating:

> All of the facts fundamental to Freeman's claim occurred in 1971. This is not a case in which substantial facts occurred after ERISA's effective date. ERISA, therefore, is not a proper basis for the claim.

721 F.2d at 656–57.

The dissent seeks to distinguish both *Freeman* and *Quinn, supra,* on the ground that because in both cases plaintiff was not a participant in the benefit plan, jurisdiction was precluded by the terms of § 1132(a), and the question of the scope of § 1132(e) was not properly reached. *Freeman* and *Quinn* stand on different ground from one another in this respect, however. Freeman had admittedly waived his participation; that waiver was an essential element in his fraud claim. *Quinn,* on the other hand, was challenging the plan fiduciaries' determination, communicated to him long before ERISA was in force, of his nonparticipant status. A claimant such as Freeman who admits his nonparticipation has failed to state a substantial federal claim under ERISA, *see Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), and must seek relief under other law. A claimant who has been denied relief on the basis of the fiduciary's plan interpretation, on the other hand, can state an ERISA claim, unless § 1144 precludes application of ERISA as it did in *Quinn.*

**6.** The dissent observes that Menhorn's complaint contained allegations of arbitrary and capricious action by Firestone in denying him benefits in 1980. While those allegations might have been sufficient to withstand the motion to dismiss, they are not sufficient at this stage, Menhorn having come forward with no facts to support those allegations in opposition to Firestone's motion for summary judgment. See Fed.R.Civ.P. 56(e).

The question on which jurisdiction turns—whether relevant conduct occurred after January 1, 1975—was clearly put in issue on the summary judgment motion. In moving for summary judgment, Firestone presented the issue as one of law, asserting that no material facts were in dispute. Menhorn offered no opposition to Firestone's version of the facts as established in its supporting declarations. Those declarations established, and the district court found, that all acts relevant to the loss of benefits occurred before January 1, 1975, and that the denial was merely the "inexorable consequence" of the prior events.

The burden of proof on the issue of arbitrary and capricious action by Firestone was clearly on Menhorn. It was therefore Menhorn's obligation in opposing Firestone's motion to come forward with facts that showed that he could meet his burden of proof at trial and thereby also sustain federal subject matter jurisdiction. Menhorn having failed to do so, it is hardly appropriate now, as the dissent proposes, for the appellate court to go back to the complaint to find subject matter jurisdiction.

not work to deny an individual benefits until specifically applied to him. A denial of benefits pursuant to such a provision thus operates simultaneously as *both* the event triggering accrual of a cause of action *and* the substantial act resulting in denial of benefits, *see Lafferty, supra.* It would therefore not fall within either clause of § 1144(b)(1), and would under § 1144(a) be subject to ERISA. *See, e.g., Paris v. Profit Sharing Plan,* 637 F.2d 357, 360–61 (5th Cir.) (ERISA held to govern post-effective·date denial of benefits under plan adopted before effective date, because relevant provision so ambiguous that its application was event most essential to plaintiffs' claim), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *Winer v. Edison Bros. Stores Pension Plan,* 593 F.2d 307, 312–14 (8th Cir. 1979) (ERISA held to govern enforceability of "bad boy" forfeiture clause invoked after ERISA's effective date with respect to alleged misconduct occurring before that date, because forfeiture clause found to be non-self-executing, and effective only when specifically applied to plaintiffs). As we noted in *Gordon v. ILWU–PMA Benefit Funds,* 616 F.2d 433 (9th Cir.1980): "Since ERISA's fiduciary duties did not become effective until January 1, 1975, a violation of those duties must amount to a breach of trust in the administration of the plan *after that date." Id.* at 437 (emphasis added).

*Federal jurisdiction over Menhorn's action*

Having established that state law governs Menhorn's claim, we arrive at the question central to this appeal: Did Congress intend that, even in cases where ERISA by its own terms does not supplant otherwise applicable state law, a federal forum should be open to enforce that state law? The statement of the issue suggests its resolution. Although § 1144 speaks only in terms of preemption, we think the conclusion inevitable that it also indicates legislative intent regarding the scope of the jurisdiction conferred under § 1132(e). *See Martin v. Bankers Trust Co.,* 565 F.2d 1276, 1278–79 (4th Cir.1977). For without

any provision of federal law to interpret or enforce, there is no interest in providing a federal forum. Sections 1132 and 1144 read together reflect no congressional intent to burden the federal courts with a new class of actions having nothing to do with federal law. *Cf.* Cohen, *The Broken Compass: The Requirement that a Case Arise "Directly" Under Federal Law,* 115 U.Pa.L.Rev. 890, 916 (1967).

The legislative history, although not speaking directly to the question, similarly discloses no such intent. The Conference Committee Report states only that "[t]he preemption provision ... will not affect any causes of action that have arisen before January 1, 1975, and it will not affect any act or omission which occurred before that date." H.R.Conf.Rep., *supra, reprinted in* U.S.Code Cong. & Ad.News at 5162. Though explicitly concerned only with the scope of ERISA preemption, this statement implies that pre-1975 actions and conduct are to be wholly unaffected by federal law, either by substantive preemption or by federal jurisdiction. It certainly does not suggest that matters not preempted by the new federal law should nevertheless be litigable in federal court.

The same can be said for the general statement of legislative policy found in 29 U.S.C. § 1001(b):

It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

Here again the context suggests a congressional intent to provide "ready access to the Federal courts" for the construction and enforcement of the newly "establish[ed] standards of conduct, responsibility, and obligation for fiduciaries," not for

all causes of action concerning employee benefit plans.[7]

A few courts seem to have taken a different approach to this problem. Some appear to rely on what they perceive as ERISA's creation of a "federal common law" governing all litigation concerning employee benefit plans irrespective of when the material events took place. *See, e.g., Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966, 969–74 (5th Cir.1981); *Reiherzer v. Shannon,* 581 F.2d 1266, 1269–72 (7th Cir.1978) ("federal common law" found to provide jurisdictional predicate for an action that both accrued and was based on conduct occurring before ERISA's effective date; § 1144 not mentioned). One court has found § 1132 to comprise a grant of jurisdiction to apply *state* law where it is not preempted under § 1144. *Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1351–52 (8th Cir.1980).[8]

■■■ We find these cases unpersuasive. A statute will not be given retroactive effect absent clear legislative intent. *See, e.g., United States v. Security Indus. Bank,* 459 U.S. 70, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982); *Union Pac. R. Co. v. Laramie Stock Yards Co.,* 231 U.S. 190,

199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913); *United States v. The Peggy,* 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801). In this case, not only was Congress not silent on the question of the retroactivity of ERISA's statutory and common law, it explicitly directed the contrary in § 1144 in order to avoid imposing ERISA's standards on pre-ERISA conduct. *See Malone v. White Motor Corp.,* 435 U.S. 497, 499 n. 1, 98 S.Ct. 1185, 1187 n. 1, 55 L.Ed.2d 443 (1978). As explained in our discussion of the statutory scheme above, Congress authorized the courts to develop a preemptive federal common law governing only those matters falling outside the scope of § 1144(b)(1), which expressly preserves the effect of state law in the specified circumstances— that is, a federal common law that applied, according to the terms of § 1144, *prospectively only.* Prospective application would carry out Congress's intent that actions brought under ERISA "are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947," H.R.Conf. Rep., *supra:* Section 301 also authorized the creation of a federal common law prospectively only. *See Local Union No. 17 v. Mason & Hanger Co.,* 217 F.2d 687, 691 (2d Cir.1954); *Schatte v. International Al-*

---

7. The dissent purports to find support for its position in the statements of a leading legislative conferee that ERISA's "substantive and enforcement provisions ... are intended to preempt the field ..., thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans." 120 Cong. Rec. S 15737 (Aug. 22, 1974) (statement of Sen. Williams), *reprinted in* U.S.Code Cong. & Ad. News 5177, 5188. Senator Williams was simply articulating the uncontroversial proposition that any state law relating to employee benefit plans inconsistent with ERISA's "substantive and enforcement provisions" is preempted and unenforceable. *See, e.g., Shaw v. Delta Airlines, Inc.,* —— U.S. ——, 103 S.Ct. 2890, 2900, 2904 n. 25, 77 L.Ed.2d 490 (1983); *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). This is a different issue from the one presented in the case at bar: Preemption here turns on the *timing,* not the *type,* of plaintiff's claim. The dissent concedes that the state law governing break-in-service rules governs Menhorn's action. Thus the threat of possible substantive conflict between state and federal law is not an issue here.

8. *Morgan v. Laborers Pension Trust Fund,* 433 F.Supp. 518 (N.D.Cal.1977), is distinguishable on this issue, inasmuch as the district court there found an independent basis for jurisdiction under § 302 of the Labor-Management Relations Act, 29 U.S.C. § 186. *Id.* at 524. *Bacon v. Wong,* 445 F.Supp. 1189 (N.D.Cal.1978), applied state law to a claim based on pre-ERISA conduct without considering whether the court had jurisdiction to do so.

The dissent's reliance on *Terpinas v. Seafarer's Intern. Union of N. America,* 722 F.2d 1445 (9th Cir.1984), is misplaced. That action was based on a denial of benefits by a pension plan based on application of a post-1975 change in the plan to deprive an employee of a disability pension which had become vested under the terms in effect before 1975. It does not appear that ERISA jurisdiction was questioned and it is not likely that it would have been inasmuch as the action was based on post-1975 acts, plainly subject to ERISA.

*liance of Theatrical Stage Employees,* 182 F.2d 158, 164 (9th Cir.), *cert. denied,* 340 U.S. 827, 71 S.Ct. 64, 95 L.Ed. 608 (1950).

Retroactive application of ERISA's provisions is thus forbidden by the plain terms of the statute. If, on the other hand, retroactive application of "federal common law" were accomplished by way of application of preexisting state law rules, it would contravene Congress's purpose of achieving a nationally uniform system of rules. Wholesale incorporation of the differing laws of the various states, by labeling them "federal," is inconsistent with the legislative purpose of "eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans." Statement of Sen. Williams, note 7, *supra.*

Finally, whether such rules of decision are styled state law or retroactive federal common law, their application by federal courts absent diversity of citizenship between the parties raises a serious constitutional question. Article III, § 2 of the Constitution provides that the judicial power of the United States shall, in matters not involving certain parties or diversity of citizenship, extend only to cases or controversies "arising under" federal law. While the limits of this grant have never been clearly defined, a congressional grant of federal jurisdiction to apply state law would be of doubtful validity. *See Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp.,* 348 U.S. 437, 442, 452–54, 75 S.Ct. 489, 491, 496–97, 99 L.Ed. 510 (1955); *Cowan v. Keystone Employee Profit Sharing Fund,* 586 F.2d 888, 894 (1st Cir.1978). We will not attribute to Congress an intent to make so problematic a jurisdictional grant in the absence of clear evidence of such intent. *See, e.g., Hopkins Fed. Sav. & Loan Ass'n. v. Cleary,* 296 U.S. 315, 334–35, 56 S.Ct. 235, 239–40, 80 L.Ed. 251 (1935).

We conclude that ERISA provides no basis for federal jurisdiction over Menhorn's action. The district court's entry of judgment is vacated and the action is remanded to the district court with directions to dismiss for lack of subject matter jurisdiction.

FERGUSON, Circuit Judge, dissenting:

I dissent. The majority denies federal court access to employee benefit plan participants whose pension claims have been or will be denied after ERISA's effective date when their claims are denied because of acts or omissions that occurred prior to 1975. This result is contrary to the law of this circuit, as well as to the express provisions of ERISA, and frustrates congressional intent of providing ready access to the federal courts to enforce pension claims.

Title 29, section 1132(a)(1)(B) of the United States Code provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Such an action may be brought in either state or district court. 29 U.S.C. § 1132(e)(1). The majority, however, nullifies this express grant of concurrent federal jurisdiction via the preemption provisions of 29 U.S.C. § 1144(b)(1).

The majority's mistake is its attempt to construe ERISA's preemption provision coextensively with federal jurisdiction. The preemption provision of section 1144 governs courts' choice-of-law decisions in pension claims. It does not define the bounds of federal jurisdiction and was never intended to.

While I agree with the majority that the federal court has no jurisdiction under ERISA to hear a pension claim in which the cause of action arises prior to January 1, 1975, I cannot conclude that when a cause of action arises after ERISA's effective date, federal jurisdiction is precluded because the claim is denied on the basis of pre-ERISA acts or omissions. A cause of action that arises prior to ERISA's effective date does not "arise under" a federal statute and thus, absent diversity, there is no federal jurisdiction. U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 1331. In this case, however, Menhorn's cause of action arose in 1980, the year in which he applied for

and was denied pension benefits. *See Paris v. Profit Sharing Plan, etc.*, 637 F.2d 357, 361 (5th Cir.), *cert. denied*, 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *Winer v. Edison Bros. Stores Pension Plan*, 593 F.2d 307, 312 (8th Cir.1979); *Morgan v. Laborers Pension Trust Fund*, 433 F.Supp. 518, 522 n. 5 (N.D.Cal.1977). Menhorn's cause of action thus arose under a federal statute, and the district court had subject matter jurisdiction. *See* 1974 U.S. Code Cong. & Ad.News 5188 ("It is intended that [a suit brought to recover benefits under the terms of a plan] will be regarded as arising under the laws of the United States.") (comment of Senator Harrison Williams).

In holding that the district court had no jurisdiction over Menhorn's claim because it was denied by Firestone on the basis of a pre-1975 act, the majority expressly disregards the law of this circuit that ERISA permits federal courts to interpret pension plans in light of pre-ERISA state law rights irrespective of when the material events concerning the claim took place. In *Terpinas v. Seafarer's Intern. Union of N. America*, 722 F.2d 1445 (9th Cir.1984), we held that:

> The legislative history of ERISA indicates that by [29 U.S.C. § 1132(a)(1)(B)] Congress intended to create a body of federal common law governing pension rights which would augment the rights created by ERISA's substantive provisions. *Woodfork v. Marine Cooks & Stewards Union*, 642 F.2d 966, 972–73 (5th Cir.1981). This body of federal common law allows a court to "interpret a pension plan's terms in light of a worker's pre-ERISA state law rights." *Woodfork, supra*, at 973. Accordingly, [the plaintiff] may assert his substantive rights in the pre-ERISA plan pursuant to California law "as part of a judicially created body of federal law governing pension entitlement." *Id.*

*Id.* at 1447. The *Woodfork* court held that "a cause of action arising after January 1, 1975, is an ERISA claim even though it may be founded in part on earlier occurrences." *Woodfork*, 642 F.2d at 970. This

construction of ERISA's preemption and jurisdictional provisions has been correctly applied by other courts. In *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344 (8th Cir.1980), participants brought suit under the civil enforcement provision of ERISA. The court assumed subject matter jurisdiction, but applied state law to evaluate the propriety of pre-ERISA acts and omissions. Similarly, in *Bacon v. Wong*, 445 F.Supp. 1189, 1192–93 (N.D.Cal. 1978), the district court assumed jurisdiction under ERISA when the cause of action arose after January 1, 1975, but applied California law to pre-ERISA acts and omissions pursuant to ERISA's preemption exceptions.

Thus, in examining Firestone's denial of Menhorn's pension claim in 1980, section 1144 precludes us from retroactively applying ERISA's prohibition against break-in-service rules, *see* 29 U.S.C. § 1053, to Firestone's pre-ERISA plan. The fiduciary conduct of Firestone as trustee in 1980 is evaluated in light of the fact that in 1967 it was permissible under state law for an employee to lose his pension benefits because of a break in service. We are not enforcing state law; rather we are evaluating the fiduciary conduct of a trustee under ERISA "without judging the conduct of affected persons by standards different from those which applied when they acted." *Bacon v. Wong*, 445 F.Supp. at 1192. *See Paris v. Profit Sharing Plan, etc.*, 637 F.2d at 360 ("The January 1, 1975, effective date of 29 U.S.C.A. § 1144 means that the defendants cannot be held liable for damages arising from acts committed in 1974 so long as those acts comported with state law as it then existed.").

Extending federal jurisdiction over Menhorn's cause of action does not furnish a federal forum for enforcing state law. *See* majority opinion, *supra*, at 1505. The Article III concerns expressed by the majority have been discussed only in those cases concerned with providing a federal forum to a cause of action which arose prior to ERISA's enactment. Those concerns do not apply when, as here, the cause

of action arises after ERISA's effective date. "Providing a federal forum for causes of action arising after January 1, 1975 raised fewer constitutional implications, even though it was still possible the cause might be based primarily on events occurring before 1975." *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d at 972 n. 6.

Rather than follow this common-sense interpretation of the preemption provisions of ERISA, the majority holds that certain pre-ERISA "acts or omissions" may instead preclude federal subject matter jurisdiction. Only one circuit opinion cited by the majority, however, actually holds that when a cause of action arises after January 1, 1975, ERISA jurisdiction may nonetheless be barred by pre-1975 acts or omissions. *See Quinn v. Country Club Soda Co., Inc.,* 639 F.2d 838 (1st Cir.1981). The remainder of the decisions lend no support to the majority approach because they either uphold ERISA jurisdiction or bar federal jurisdiction because the *cause of action* arose prior to 1975.

*Quinn* is distinguishable from the present case because Quinn was neither a participant in nor a beneficiary of the defendant pension plan, a fact of which he was repeatedly and consistently informed. *See* 639 F.2d at 841. ERISA jurisdiction over private civil actions to enforce ERISA pension rights extends only to participants and beneficiaries of a plan. 29 U.S.C. § 1132(a)(1)(B). There is no dispute that Menhorn was a participant in Firestone's pension plan and, as such, he had standing to bring an ERISA action to enforce his rights under the plan.

Nor does this circuit's recent decision in *Freeman v. Jacques Orthopaedic & Joint Implant Surg.,* 721 F.2d 654 (9th Cir.1983) provide support for the majority holding. Freeman challenged the validity of his waiver of the right to participate in a pension plan, alleging that the waiver had been procurred through fraudulent misrepresentations made in 1971 regarding the cost of participation in the plan. The opinion does not indicate whether Freeman ever made a

claim for benefits under the plan, or if he did, when it was made. Nor does the court state when Freeman discovered the alleged fraud. Thus, there is absolutely no finding by the court that Freeman's cause of action arose after ERISA's effective date. Further, Freeman admittedly was not a participant in the defendant pension plan, and thus, the district court lacked ERISA jurisdiction over his claim.

The approach taken by the majority and by the First Circuit in *Quinn* is inconsistent with ERISA's express grant of concurrent jurisdiction to the federal courts to enforce pension claims, 29 U.S.C. § 1132(e)(1), and at odds with the Act's stated purpose of "providing ... ready access to the Federal courts." *Id.* § 1001(b). It also ignores congressional intent that the exceptions to ERISA's preemption provisions be narrowly construed:

> It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions ... are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans.

1974 U.S.Code Cong. & Ad.News 4639, 5188 (comments of Senator Williams).

Presumably, had Menhorn's employment not terminated, the majority approach would also deny Menhorn his right to a federal forum to clarify his rights under Firestone's pension plan if the clarification he sought was what effect his 1967 break-in-service would have on his pension rights. Such a construction is at odds with ERISA's express provision of a federal forum to clarify a participant's right to future pension benefits. *See* 29 U.S.C. § 1132(a)(1)(B).

Further, if Menhorn chooses to proceed in state court, that court will be required to evaluate Firestone's conduct in 1980, when Menhorn's claim was denied. I assume that the majority does not dispute that in ruling on Firestone's post-1974 conduct, the federal standards of ERISA must be applied. Thus, the majority commits to the

state courts the duty to apply federal law in ruling on Menhorn's claim. The majority, however, ironically denies *federal* courts the power to apply this same federal body of regulation.

Even under the majority's theory of ERISA jurisdiction, however, the opinion errs in concluding that Menhorn's cause of action is based wholly on events occurring before the effective date. Menhorn alleges that Firestone violated the fiduciary duties established by ERISA, *see* 29 U.S.C. § 1104(a)(1), in the handling and disposition of his claim. Firestone's conduct in processing Menhorn's claim in 1980 is subject to ERISA's fiduciary standards. *See Russell v. Massachusetts Mutual Life Ins. Co.*, 722 F.2d 482, 488 (9th Cir.1983) ("ERISA regulates fiduciary conduct ... in the handling and disposition of claims."); *Paris v. Profit Sharing Plan, etc.*, 637 F.2d at 360–61 ("The action the plaintiffs protest, and the one we must review, is the trustee's 1975 interpretation of the Profit Sharing Plan. Only with that decision did it become clear that the plaintiffs would be denied benefits.") (footnote omitted); *Gordon v. ILWU–PMA Benefits Fund*, 616 F.2d 433, 437–38 (9th Cir.1980) ("The trustees' denial of the estate's claim occurred after January 1, 1975; therefore, at the time of the denial, the trustees' actions were subject to ERISA's fiduciary standards."). When Menhorn applied for benefits in 1980, his claim was governed by the version of the pension plan then in effect. *See Hicks v. Pacific Maritime Association*, 567 F.2d 355, 357 (9th Cir.1978); *Budwig v. Natelson's, Inc. Profit Sharing Retirement*, 576 F.Supp. 661, 664 (D.Neb.1982), *aff'd*, 720 F.2d 977 (8th Cir.1983) (per curiam); *Snyder v. Titus*, 513 F.Supp. 926, 931 (E.D.Va. 1981). Firestone was required in 1980 to interpret a plan adopted after ERISA's ef-

fective date and to determine how that plan treated Menhorn's 1967 break in service. Menhorn alleged that the determination made by Firestone was arbitrary and capricious. Such an allegation may support an ERISA claim. A trustee's denial of benefits under an ERISA plan based on a pre-ERISA break in service may be arbitrary and capricious if, for example, the trustee reads an ambiguity into the pension plan relating to the break in service that is not apparent on the face of the plan. *See Snyder v. Titus*, 513 F.Supp. at 935.

In addition to alleging that Firestone's application of the break-in-service policy to Menhorn's claim was a breach of fiduciary duty, Menhorn further alleged that Firestone in the past had waived application of the break-in-service rule to others. Menhorn's complaint alleged that:

> the Company has in the past restored credited service dates for non-exempt salaried personnel, such as plaintiff, said other employees having been terminated for periods in excess of four days, such as plaintiff here. Accordingly, plaintiff believes and thereupon asserts that the decision by the Company's Plan Administrator in refusing to grant the credited service date was arbitrary and capricious. . . .

Therefore, Menhorn alleged that Firestone's denial of his claim involved an exercise of discretion—the choice to waive application of the break-in-service rule—and that by not waiving Menhorn's break in service, Firestone's actions were arbitrary and capricious. These allegations challenged "substantial acts" of Firestone in 1980, after ERISA's effective date, and thus provide a basis for federal subject matter jurisdiction even under the majority's construction.[1]

---

1. Contrary to the majority's assertion, *see supra,* p. 1502 n. 6, Menhorn's failure to repeat this allegation when opposing the motion for summary judgment does not defeat federal jurisdiction. To avoid a motion to dismiss, it is only necessary that Menhorn's pleadings demonstrate facts which support a finding of jurisdiction. *Societe de Conditionnement v. Hunter Engineering*, 655 F.2d 938, 942 (9th Cir.1981). Nor

was Menhorn required to reassert the issue in opposing the motion for summary judgment. When the nonmoving party has raised a genuine issue of material fact and the evidentiary matter in support of the motion for summary judgment does not establish the *absence* of the genuine issue, the nonmoving party is not required to present opposing evidentiary material. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160

I believe that the district court had subject matter jurisdiction over Menhorn's claim. Menhorn's cause of action arises under a federal statute. He seeks to enforce his rights as a participant in an ERISA pension plan and challenges the fiduciary conduct of the trustees in 1980 when his pension claim was denied. That is sufficient to confer subject matter jurisdiction on the federal court.

(1970); *Dalke v. Upjohn Co.,* 555 F.2d 245, 248 (9th Cir.1977). Firestone's motion for summary judgment did not address Menhorn's allegation that Firestone had waived application of the break-in-service policy to other employees. Menhorn therefore was not required to respond in order to preserve that issue.