**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 02 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| DAVID SHORE, | Nos. 10-15365 and 10-15437 |
| Plaintiff-Appellee/ Cross-Appellant, | D.C. No. 2:08-cv-01508-PMP-RJJ |
| v. | MEMORANDUM[*] |
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION PLAN, | |
| Defendant-Appellant/ Cross-Appellee. | |

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, District Judge, Presiding

Argued and Submitted December 7, 2010
San Francisco, California

Before:  REINHARDT, HAWKINS, and N.R. SMITH, Circuit Judges.

   The International Painters and Allied Trades Industry Pension Plan ("IPAT")

appeals the summary judgment grant to David Shore ("Shore") in his ERISA action

_____

   [*]   This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

seeking disability benefits under the Plan retroactive to 1974. The parties cross-appeal the district court's award of attorneys' fees. We affirm on the merits but remand for clarification of the reduction in attorneys' fees.

Shore worked for employers who contributed to the Plan until he suffered an on-the-job injury and became permanently and totally disabled on March 15, 1974, as later determined by the Social Security Administration ("SSA"). After being repeatedly told by IPAT he was one credit shy of pension eligibility, Shore applied for a disability pension in 2003, submitting documentation of his 1976 SSA disability determination, as well as proof that IPAT had miscalculated his credits and that he was, in fact, eligible for a disability pension. IPAT ultimately accepted Shore's credit calculation, but denied his disability application, concluding: (1) his credits had never vested and were thus nullified by his break in service as of 1977; and (2) his failure to apply for a disability pension within twelve months of receiving the SSA disability award, as required under the 1995 version of the Plan, disqualified him.

We have jurisdiction over Shore's claim because a significant act—namely, the award of SSA disability benefits in 1976, without which Shore could not qualify as "permanently and totally disabled" as defined by the 1967 Plan—clearly occurred after ERISA's effective date. *See* 29 U.S.C. §§ 1132(e), 1144(b)(1). This fact, combined with the accrual of Shore's cause of action when he applied for and was

2

denied disability benefits in 2003, places his claim squarely within the jurisdictional reach of ERISA and distinguishes his claim from the one asserted in *Menhorn*, where *all* of the relevant acts giving rise to the benefits claim occurred pre-ERISA. *See Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1501-02 (9th Cir. 1984).

The parties dispute whether Shore's claim is controlled by the 2003 Plan, which confers discretionary authority on the Trustees, or the 1967 Plan, which does not. By the 2003 Plan's plain language, Shore's pension eligibility is to be determined "in accordance with the provisions of the Plan in effect at the . . . time the Employee . . . left Covered Employment," which is the 1967 Plan. The district court correctly determined that the 1967 Plan governs and that, accordingly, the plan administrator's denial of Shore's claim is reviewed de novo. *See Shane v. Albertson's, Inc.*, 504 F.3d 1166, 1169 & n.1 (9th Cir. 2007); *see also Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Once the SSA deemed Shore eligible for Social Security Disability benefits, he satisfied all three eligibility requirements for a disability pension set forth in Article III, Section 8 of the 1967 Plan: (1) he was permanently and totally disabled prior to attaining age sixty-five; (2) he had at least 120 units of pension credit; and (3) he had accrued at least twelve units of future service credit in covered employment. The 1967 Plan does not condition entitlement to a disability pension on advance

3

application, as later versions of the Plan do. Therefore, "[b]y its mandatory language ('shall be entitled')," the 1967 Plan entitles Shore to disability benefits retroactive to his disability onset date. *See Canseco v. Constr. Laborers Pension Trust for S. Cal.*, 93 F.3d 600, 606 (9th Cir. 1996). Because application is merely a "procedural requirement" "to initiate payment of benefits" rather than a condition of entitlement, Shore's failure to apply for payment of benefits until 2003 "cannot destroy [his] eligibility." *See id.* at 607. Likewise, the Plan's break-in-service provisions do not apply to a worker who has satisfied all pension eligibility requirements and is already entitled to retire.[1] *See Banuelos v. Constr. Laborers' Trust Funds for S. Cal.*, 382 F.3d 897, 904-05 (9th Cir. 2004). IPAT's interpretation of Shore's retirement itself as a disqualifying "break in service" is incompatible with a holistic reading of the Plan, as well as with circuit precedent.

IPAT's attempt to distinguish *Canseco* by relying on *Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trustees*, 588 F.3d 641 (9th Cir. 2009), is equally misdirected, as Shore's claim, though involving welfare rather than pension benefits, does not implicate ERISA's anti-cutback provision. *See id.* at 649; 29 U.S.C.

---

[1] Because Shore already meets all three requirements of a disability pension under the Plan and is thus entitled to retire, it is immaterial that he does not satisfy a different Plan provision allowing employees falling short of pension eligibility to preserve their accrued service credits notwithstanding a break in service.

§ 1054(g).  Our interpretive principles in *Canseco*, which were not contingent on the type of benefit at issue, apply no less to a claim for disability benefits rooted in the express and unambiguous language of a plan document.

An award of reasonable attorney fees is within the district court's discretion, but a departure from the lodestar amount by as much as twenty percent must be supported by specific and articulable reasons.  *See  Moreno v. City of Sacramento*, 534 F.3d 1106, 1112-13 (9th Cir. 2008).  Such required specificity is lacking where the district court explains its twenty-two percent reduction in number of hours solely by reference to "the reasons set forth in Defendant's Response," which itself contains only vague contentions that the hours claimed are excessive.  Though we are mindful of the district court's busy docket, case law compels us to remand for a "concise but clear" explanation of the court's reduction in hours so as to ensure that no abuse of discretion has occurred.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1399-1400 (9th Cir. 1992).

**AFFIRMED in part, REVERSED in part, and REMANDED.**  Each party to bear its own costs on appeal.

*Shore v. International Painters and Allied Trades Industry Pension Plan*, Nos. 10-15365 and 10-15437

Judge N.R. SMITH dissenting,

Because the majority opinion (1) disregards our lack of jurisdiction in this case and (2) ignores the unambiguous language of the plan, instead relying on inapplicable precedent to hold that Shore was wrongfully denied disability benefits, I am compelled to dissent.

1. Actions not governed by ERISA are not within the scope of the grant of jurisdiction in 29 U.S.C. § 1132(e) and must be dismissed for lack of subject matter jurisdiction. *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1503-05 (9th Cir. 1984). Under 29 U.S.C. § 1144(b)(1), ERISA does not apply to claims that accrue after ERISA became effective on January 1, 1975 if the claim accrues through the denial of benefits based on "an unambiguous and nondiscretionary plan provision adopted before the effective date." *Menhorn*, 738 F.2d at 1501. This limitation reflects considerations of "fairness to defendants [by] avoiding retroactive application of remedial principles not in effect at the time of the conduct in question[]." *Id.* at 1500 n.3. It "would be unfair to judge pre-ERISA conduct retrospectively by ERISA's standards." *Id.* at 1500. While

1

Shore's claim accrued after 1975 when Shore's claim was denied, the denial was the inexorable consequence of the 1967 plan's unambiguous and nondiscretionary break in employment provisions. Thus, under *Menhorn*, the claim accrual is insufficient to allow us subject matter jurisdiction.

Further, ERISA also does not apply if the substantial conduct giving rise to the cause of action occurred prior to ERISA's effective date. *Id.* at 1501-02. Here, all substantial conduct giving rise to this cause of action occurred prior to January 1, 1975. All of Shore's work and all plan contributions were made prior to 1975. His disability also occurred prior to 1975. Even Shore's call to IPAT, when he was accurately informed that he was not vested,[1] took place prior to 1975. Therefore, we lack jurisdiction over this case.

The majority argues that the Social Security Administration's determination in 1976 that Shore was disabled is a significant act that gives rise to jurisdiction. ERISA was enacted to govern "the conduct of fiduciaries in the administration of employee benefit plans," *id.* at 1498, not the actions of unrelated third parties. *Cf.* 29 U.S.C. 1002(14). Therefore, the determination by the SSA is irrelevant to our jurisdiction. Even worse, the majority asks us to impose liability on IPAT for a

_____

[1] Contrary to the majority's assertion, Shore was not told he was ineligible for benefits; he was told he was not vested. He did not mention his disability at this time.

2

third party's act over which it had neither knowledge or control. Further, IPAT did not even have reason to know of the SSA's action, since Shore did not inform the plan of his injury or disability until 2003. Lastly, the disability determination is not a significant act giving rise to the cause of action. Shore's claim was not denied because he was not disabled, but rather because, according to the terms of the 1967 (pre-ERISA) plan, his break in employment cancelled any previous entitlement to benefits. Therefore, we have no jurisdiction here.

2.    The majority fails to address the major issue in this case—and the issue on which IPAT consistently relied when denying Shore's claim—the operation of the plan's vesting and break in employment provisions. Instead, it erroneously held that entitlement to benefits is equivalent to vesting.

This is not a case where the court must determine the circumstances under which a benefit will vest. The plan document clearly outlines those circumstances: the claimant must (1) be at least 50 years of age, (2) have 120 total pension credits, and (3) have at least 60 future pension credits. It is undisputed that, at the time Shore was disabled, he did not have 60 future pension credits, and was not 50 years of age. Therefore, he was not vested in the disability plan at the time of his disability. Benefits which are not vested may be cancelled by later plan amendments or by a break in employment. *See Nachman Corp. v. Pension Ben.*

3

*Guaranty Corp.*, 446 U.S. 359, 363-4.27 (1980) (vesting means that "the employee's right to the benefit would survive the termination of his employment"); *Anderson v. Suburban Teamsters of N. Ill. Pension Fund Board of Trs.*, 588 F.3d 641, 650 (9th Cir. 2009) (unvested welfare benefits not protected by anti-cutback rules); *Banuelos v. Construction Laborers' Trust Funds*, 382 F.3d 897, 904-05 (9th Cir. 2004) (only vested benefits are not subject to break in service provisions).

The plan unambiguously provided that, if an employee did not earn at least six pension credits in a three-year period, any pension credit would be cancelled at the end of the third year. It is undisputed that Shore did not earn six pension credits between 1974 and 1976. Thus, under the plain terms of the plan, any pension credit, and thus any eligibility for disability benefits, was cancelled long before Shore applied for benefits in 2003.

The majority's holding that, once an employee qualifies for a benefit, the break in employment rules do not apply disregards the plain language of this disability plan. When interpreting a writing, we are required to "look to the agreement's language in context and construe each provision in a manner consistent with the whole such that none is rendered nugatory." *Dupree v. Holman Prof. Counseling Ctrs.*, 572 F.3d 1094, 1097 (9th Cir. 2009); *see also* Restatement (Second) of Contracts § 202(2) ("A writing is interpreted as a whole, and all

4

writings that are part of the same transaction are interpreted together.").  This is especially appropriate here, where labor and management "worked together to formulate the details" of the plan through collective bargaining.

While the majority is correct that the plan specifies that an employee "shall be entitled" to disability benefits after meeting certain requirements, the majority ignores the express limitations to that entitlement contained in the plan as a whole. The plan also plainly states that pension credits "shall be cancelled" after a three-year break in employment.  Further, the plan explicitly provides a limited exception that employees who are vested "will *remain* entitled" to their benefits even after a break in employment.  If, as the majority posits, once an employee became entitled to benefits he could never lose those benefits, this language ("remain entitled") would be "rendered nugatory."

*Banuelos*, 382 F.3d 897, cited by the majority, is not to the contrary.  Unlike Shore, Banuelos was already vested under the terms of his pension plan before his break in service.  *Id.* at 904.  Here, as in *Banuelos*, if Shore had "completed the required service for vesting, a subsequent break in service [could not have] deprived [him] of benefits."  *Id.*  However, Shore had not completed the vesting requirements, and thus the break in employment cancelled his pension credits.

The majority can point to no valid authority supporting its assertion that

5

eligibility for a benefit is equivalent to vesting. *Canseco v. Construction Laborers Pension Trust for Southern California*, 93 F.3d 600 (9th Cir. 1996) is factually and legally distinguishable. The plan provisions, the legal question decided, and the type of benefits are all different from the present case. Under ERISA, welfare benefits and pension benefits are treated quite differently. ERISA establishes minimum vesting standards for pension benefits, but not welfare benefits. 29 U.S.C. § 1053. Welfare benefits vest only when and how the employer's plan specifies. *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1160 (9th Cir. 2001). Pension benefits are protected by anti-cutback rules, but welfare benefits are not. *Anderson*, 588 F.3d at 650.

Furthermore, *Canseco* did not address the relevant issue here: how vesting and break in employment provisions may affect eligibility for benefits. It decided one limited issue: whether—under that specific plan—submitting an application was an eligibility requirement. 93 F.3d at 606-09. Not only are the application provisions different in the IPAT plan, but the plan (as negotiated by the parties) stipulates that employees who are not vested will have their pension credit cancelled after a break in employment even if they were previously eligible for, but

6

not receiving, benefits.[2] Under the plain terms of the plan as whole, Shore was not entitled to a disability pension.

---

[2] "Pensioners" (those who are retired and receiving benefits) are not subject to the break in employment clause, which applies only to "Employees."