Judge N.R. SMITH
dissenting,
Because the majority opinion (1) disregards our lack of jurisdiction in this case and (2) ignores the unambiguous language of the plan, instead relying on inapplicable precedent to hold that Shore was wrongfully denied disability benefits, I am compelled to dissent.
1. Actions not governed by ERISA are not within the scope of the grant of jurisdiction in 29 U.S.C. § 1132(e) and must be dismissed for lack of subject matter jurisdiction. Menhorn v. Firestone Tire & Rubber Co., 738 F.2d 1496, 1503-05 (9th Cir.1984). Under 29 U.S.C. § 1144(b)(1), ERISA does not apply to claims that accrue after ERISA became effective on January 1, 1975 if the claim accrues through the denial of benefits based on “an unambiguous and nondiscretionary plan provision adopted before the effective date.” Menhorn, 738 F.2d at 1501. This limitation reflects considerations of “fairness to defendants [by] avoiding retroactive application of remedial principles not in effect at the time of the conduct in question[ ].” Id. at 1500 n. 3. It “would be unfair to judge pre-ERISA conduct retrospectively by ERISA’s standards.” Id. at 1500. While Shore’s claim accrued after 1975 when Shore’s claim was denied, the denial was the inexorable consequence of the 1967 plan’s unambiguous and nondiscretionary break in employment provisions. Thus, under Menhorn, the claim accrual is insufficient to allow us subject matter jurisdiction.
Further, ERISA also does not apply if the substantial conduct giving rise to the cause of action occurred prior to ERISA’s effective date. Id. at 1501-02. Here, all substantial conduct giving rise to this cause of action occurred prior to January 1, 1975. All of Shore’s work and all plan contributions were made prior to 1975. His disability also occurred prior to 1975. Even Shore’s call to IPAT, when he was accurately informed that he was not vested,[1] took place prior to 1975. Therefore, we lack jurisdiction over this case.
*601 The majority argues that the Social Security Administration’s determination in 1976 that Shore was disabled is a significant act that gives rise to jurisdiction. ERISA was enacted to govern “the conduct of fiduciaries in the administration of employee benefit plans,” id. at 1498, not the actions of unrelated third parties. Cf. 29 U.S.C. 1002(14). Therefore, the determination by the SSA is irrelevant to our jurisdiction. Even worse, the majority asks us to impose liability on IPAT for a third party’s act over which it had neither knowledge or control. Further, IPAT did not even have reason to know of the SSA’s action, since Shore did not inform the plan of his injury or disability until 2008. Lastly, the disability determination is not a significant act giving rise to the cause of action. Shore’s claim was not denied because he was not disabled, but rather because, according to the terms of the 1967 (pre-ERISA) plan, his break in employment cancelled any previous entitlement to benefits. Therefore, we have no jurisdiction here.
2. The majority fails to address the major issue in this case — and the issue on which IPAT consistently relied when denying Shore’s claim — the operation of the plan’s vesting and break in employment provisions. Instead, it erroneously held that entitlement to benefits is equivalent to vesting.
This is not a case where the court must determine the circumstances under which a benefit will vest. The plan document clearly outlines those circumstances: the claimant must (1) be at least 50 years of age, (2) have 120 total pension credits, and (3) have at least 60 future pension credits. It is undisputed that, at the time Shore was disabled, he did not have 60 future pension credits, and was not 50 years of age. Therefore, he was not vested in the disability plan at the time of his disability. Benefits which are not vested may be can-celled by later plan amendments or by a break in employment. See Nachman Corp. v. Pension Ben. Guaranty Corp., 446 U.S. 359, 363-64, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980) (vesting means that “the employee’s right to the benefit would survive the termination of his employment”); Anderson v. Suburban Teamsters of N. Ill. Pension Fund Board of Trs., 588 F.3d 641, 650 (9th Cir.2009) (unvested welfare benefits not protected by anti-cutback rules); Banuelos v. Construction Laborers’ Trust Funds, 382 F.3d 897, 904-05 (9th Cir.2004) (only vested benefits are not subject to break in service provisions).
The plan unambiguously provided that, if an employee did not earn at least six pension credits in a three-year period, any pension credit would be cancelled at the end of the third year. It is undisputed that Shore did not earn six pension credits between 1974 and 1976. Thus, under the plain terms of the plan, any pension credit, and thus any eligibility for disability benefits, was cancelled long before Shore applied for benefits in 2003.
The majority’s holding that, once an employee qualifies for a benefit, the break in employment rules do not apply disregards the plain language of this disability plan. When interpreting a writing, we are required to “look to the agreement’s language in context and construe each provision in a manner consistent with the whole such that none is rendered nugatory.” Dupree v. Holman Prof. Counseling Ctrs., 572 F.3d 1094, 1097 (9th Cir.2009); see also Restatement (Second) of Contracts § 202(2) (“A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together.”). This is especially appropriate here, where labor and management “worked together to formulate the details” of the plan through collective bargaining.
*602 While the majority is correct that the plan specifies that an employee “shall be entitled” to disability benefits after meeting certain requirements, the majority ignores the express limitations to that entitlement contained in the plan as a whole. The plan also plainly states that pension credits “shall be cancelled” after a three-year break in employment. Further, the plan explicitly provides a limited exception that employees who are vested “will remain entitled” to their benefits even after a break in employment. If, as the majority posits, once an employee became entitled to benefits he could never lose those benefits, this language (“remain entitled”) would be “rendered nugatory.”
Banuelos, 382 F.3d 897, cited by the majority, is not to the contrary. Unlike Shore, Banuelos was already vested under the terms of his pension plan before his break in service. Id. at 904. Here, as in Banuelos, if Shore had “completed the required service for vesting, a subsequent break in service [could not have] deprived [him] of benefits.” Id. However, Shore had not completed the vesting requirements, and thus the break in employment cancelled his pension credits.
The majority can point to no valid authority supporting its assertion that eligibility for a benefit is equivalent to vesting. Canseco v. Construction Laborers Pension Trust for Southern California, 93 F.3d 600 (9th Cir.1996) is factually and legally distinguishable. The plan provisions, the legal question decided, and the type of benefits are all different from the present case. Under ERISA, welfare benefits and pension benefits are treated quite differently. ERISA establishes minimum vesting standards for pension benefits, but not welfare benefits. 29 U.S.C. § 1053. Welfare benefits vest only when and how the employer’s plan specifies. Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1160 (9th Cir.2001). Pension benefits are protected by anti-cutback rules, but welfare benefits are not. Anderson, 588 F.3d at 650.
Furthermore, Canseco did not address the relevant issue here: how vesting and break in employment provisions may affect eligibility for benefits. It decided one limited issue: whether — under that specific plan — submitting an application was an eligibility requirement. 93 F.3d at 606-09. Not only are the application provisions different in the IPAT plan, but the plan (as negotiated by the parties) stipulates that employees who are not vested will have their pension credit cancelled after a break in employment even if they were previously eligible for, but not receiving, benefits.[2] Under the plain terms of the plan as whole, Shore was not entitled to a disability pension.

. Contrary to the majority's assertion, Shore was not told he was ineligible for benefits; he was told he was not vested. He did not mention his disability at this time.

. “Pensioners” (those who are retired and receiving benefits) are not subject to the break in employment clause, which applies only to "Employees.”